Burgess, J.
Action on a negotiable promissory note for $8,000, dated St. Louis, Missouri, December 29, 1890; executed by the defendant to William H. Cooper and Theodore D. Wannfried, payable one year after its date, with six per cent interest, and indorsed and delivered by the payees to the plaintiff as collateral, by Wannfried. The petition is in the usual form.
The answer denies all allegations in the petition. It then avers that there was no consideration for said note, and that the same was obtained from him by *322 means of fraud and misrepresentations "by plaintiff and one Wannfried, one of the payees.
For further answer to plaintiff’s petition, and by way of counterclaim against the plaintiff, it is averred that in the month of December, 1890, a certain partnership known as the Buckeye Mining Company, composed of J. C. Steele, Fred L. Rosemond, Charles M. Campbell, and the plaintiff, were the owners of a mining lease on certain real estate in Jasper county, Missouri. That at said time defendant and said Wannfried sustained intimate social and business relations and that at said time said Wannfried was the adviser of defendant as to investments in mining property in said county, which plaintiff well knew. That on the ninth of December, 1890, Wannfried proposed to defendant that he, Wannfried, the plaintiff, said Cooper, and the defendant, should associate themselves together for the purpose of purchasing said lease; that thereafter Wannfried brought the persons named including himself,, together, and it was then decided that the plaintiff, said Cooper, Wannfried, and defendant should together purchase said lease from said mining company, with a view to forming a copartnership with the view of holding said lease and operating the same; that of the purchase price of said lease the defendant should contribute sufficient to pay two fifths thereof, the plaintiff, Wannfried, and Cooper each one fifth, and that their interests should be in proportion to the amount paid by them respectively toward the purchase price.
That plaintiff and Wannfried then and there represented to defendant that the purchase price of said lease, together with the machinery pertaining thereto, was $25,000 and that it could not be bought for any less. That, relying on the statement of plaintiff and said Wannfried that it would take $25,000 to purchase *323 the lease and machinery, he agreed to contribute toward the purchase price for his two fifths interest in the same the sum of $10,000; and that it was then and there agreed that the plaintiff, Wannfried, and Cooper should each contribute $5,000 toward the purchase price.
That, believing said statements of plaintiff and Wannfried to be true, and relying upon them as aforesaid, defendant paid to plaintiff as the agent of said Buckeye Mining Company, $2,000 toward the purchase price of said property, and at that time, in the presence of defendant, for the purpose of deceiving him, Wannfried and Cooper each went through the form' of giving his check for $1,000 to plaintiff in part payment of the interest pretended to be purchased by him, but that said checks were not paid, nor were they intended to be paid, but were returned by plaintiff to Wannfried and Cooper. That believing the said representations of plaintiff and Wannfried to be true, defendant executed the note sued on, for the purpose of securing what he then believed to be the remainder of his proportionate share of the purchase price of said leasehold and machinery.' That the note was made payable to the order of Wannfried and Cooper upon the faith cf their representations and also of plaintiff that each of them would pay to said, mining company the sum of $5,000, and that the note sued on was to be turned over to the mining company for' the remainder of the purchase price of said leasehold and machinery, and that Wannfried and Cooper had no connection with said note whatever, except that they then and there volunteered to become indorsers for this defendant. That thereafter, on the twenty-ninth day of December, 1891, and before he learned that the representations aforesaid were false, he paid to plaintiff, on said *324 note, the sum of $4,480, and on the same day he paid on said note the further sum of $240.
The answer further avers:
“That all of the representations of plaintiff and Wannfried which induced defendant to give said note an 1 make said payments thereon and to make said cash payment of $2,000 were false at the time they were made and were then known by them to be false; and that in fact the said leasehold and machinery were not purchased for the sum of $25,000, but that the purchase price actually contracted to be paid was $9,375; and that it was not true plaintiff, Wannfried or Cooper intended to contribute $5,000, nor advance any money on account of the purchase price of said leasehold and machinery, and that they did not pay any part of the purchase price, but that it was all paid by the defendant.
“That by reason'of said false representations of plaintiff and Wannfried, defendant was induced to execute said note and pay said sums of money. That said false representations were made by plaintiff and Wannfried for the purpose of defrauding defendant out of two fifths of the difference between $9,375, the price actually paid for said leasehold and machinery, and the sum of $25,000, falsely represented to be the purchase price thereof; that defendant should not have been required to pay more than two fifths of the actual purchase price, to wit, two fifths of $9,375, or the sum of $3,750, for his two fifths interest in said leasehold and machinery, and that defendant is in equity and good conscience entitled to recover back from plaintiff all that defendant has paid in excess of $3,750. That the aggregate amount which he did pay plaintiff was$6,720, and that such sum was $2,970 in excess of his proportionate share of the purchase price for said leasehold and machinery.”
*325 The answer prays that plaintiff may be ordered to deliver up said note sued on to be canceled, and that defendant recover of plaintiff $2,970, together with interest from the twenty-ninth day of December, 1891. Plaintiff filed reply to the answer, denying all new matter therein.
The trial was before the court, a jury being waived. There was a judgment rendered in favor of defendant on his counterclaim against the plaintiff for the sum of $1,569.69, and plaintiff appealed.
It is insisted by counsel for plaintiff that the case was tried as one in equity, while, upon the other hand, counsel for defendant express much surprise- at such contention. The judgment recites that when the case was called for trial both parties answered ready, and a jury being waived, all and singular, the matters and things in issue were submitted to the court for trial. This would seem to indicate that the case was treated and tried as an action at law, for why do such a useless thing as to waive a jury, unless it was that character of case which entitled the parties to have the issues tried by a jury?
It is true that no instructions were asked or given, but this is by no means conclusive that the case was tried as one in equity, for such things may be and are often waived. Unless, then, the case be treated by this court as one in equity, there is nothing- before us for review, as only matters of exception properly saved and the record proper are subject to review in actions at law. In equity cases the evidence may be reviewed by this court, and judgment rendered as the evidence may seem to require.
But, treating it in the most favorable light for the plaintiff, in order that he may have the opinion of this court upon the merits of the case — that is, that it was properly tried by the court sitting as a chancellor, and *326 the evidence subject to review, we can but conclude that the judgment was not only authorized by the evidence, but that it was eminently just and proper. It would be difficult to imagine a transaction so pregnant with fraud and chicanery as the one out of which this litigation has grown. It was fraudulent in its inception and culmination, and, if the evidence is to be believed, plaintiff knew all about it from first to last. To hold that he is a bona fide holder of the note in suit would be in utter disregard of the evidence and the facts disclosed thereby.
While the presumption,- as a rule, is that the holder of a negotiable note, who acquires it before it becomes due, is a holder in good faith, yet when it is shown to have been originally obtained by fraud, as in this case, the burden shifts, and it then devolves upon the holder to show that he got it for value in good faith. Hamilton v. Marks, 63 Mo. 167; Johnson v. McMurry, 72 Mo. 282.
The defense interposed is not for the rescission of the contract for the purchase by defendant and others of the lease and mining properties of the Buckeye Mining Company, in which he purchased two fifths interest, and executed the note sued on in part payment therefor, but it is in affirmance of that contract at the real purchase price, $12,500, to have the note canceled, and for judgment against plaintiff for the amount paid to him and other tort feasors in cash in excess of the amount which should have been paid by defendant, and which, in fact, he did pay, upon the ground that he was fraudulently led to believe that the contract price was $25,000, when in truth and in fact it was only $12,500, and in this way the note and amount claimed by defendant in his counterclaim were fraudulently obtained from him. Hence the fact that defendant paid interest on the note which amounted to $160, *327 even though it was paid after the discovery by him that t he note and the money was paid by him as set forth in his counter claim, is no barrier to his remedy for fraud. Nauman v. Oberle, 90 Mo. 666; Whitney v. Allaire, 4 Denio 554; Parker v. Marquis, 64 Mo. 38.
There is nothing disclosed by the record which would justify a retrial of the cause. The judgment was clearly for the right party and should be affirmed. It is so ordered.
All of this division concur.