## KEIM v. VETTE, Appellant.

### Division Two, March 11, 1902.

1. **Replevin: PLEADING: AFFIDAVIT.** An insufficient affidavit does not preclude the introduction of evidence under a good petition in replevin.

2. **Negotiable Note: INDORSEMENT IN BLANK: FRAUDULENT POSSESSION: BURDEN.** The rule that "the holder of a negotiable note indorsed in blank by the payee is prima facie its owner and is presumed to have taken it in good faith for value before maturity and

Keim v. Vette.

without notice," does not apply when the note is shown to have been originally obtained by fraud, for then it devolves upon the holder to show that he came into its possession for value and in good faith.

3. ———: ———: DEPOSIT FOR SAFE-KEEPING. But where the owner of notes deposits them, for safe-keeping, before maturity, with the payee, who had previously indorsed them in blank, and on the same day the payee pledges them as security for the payment of a bona fide indebtedness, the holder, having no knowledge of any infirmity in the title thereto of the payee, who has by the real owner been clothed with all the indicia of ownership, is entitled to retain them for a fulfillment of the pledge, unless the pledge itself is usurious or otherwise illegal. But if the pledge itself is tainted with usury it is under the Missouri statute "invalid and illegal," and can not be used as a muniment of the pledgee's title to the notes. And the question of usury can be raised by the true owner, or by any one whose rights are affected by the pledge.

4. **Practice:** USURIOUS PLEDGE: HOW RAISED. In a suit in replevin to recover certain notes deposited by the owner with the payee for safe-keeping, and by the payee given to the defendant as a pledge for the payment of a valid indebtedness, the defendant may by his instructions challenge the plaintiff's right to question the legality of the pledge as being usurious.

5. **Negotiable Notes:** COLLATERAL SECURITY: USURIOUS PLEDGE. A pledge of notes to secure a valid indebtedness, is illegal and void as to every person whose rights are affected by it, if it is tainted with usury. The illegality of the pledge made by the fraudulent depositary or bailee of the notes, may be raised by the true owner of the notes. He, as to such a pledge, is not a stranger.

6. ———: USURY: INSTRUCTION: ABSTRACT LAW. It is not reversible error to give an instruction which contains a mere abstract legal definition of usury, though faulty, if it does not affect the issue of usury submitted by other instructions which cover the facts in evidence.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Collins, Jamison & Chappel* for appellant.

(1) The affidavit attached to the petition in this case is not in accordance with the statute nor the rules of pleading applicable to such cases. Sec. 4463, R. S. 1899; Pattison's Forms for Missouri Pleading, sec. 458. (2) The respondent, Philip Keim, having placed the Stewart note for $7,000 in the hands of Charles Kuhn, clothed him with the evidence of ownership thereof, and he is estopped from claiming the same from Vette, who had no notice at the time he acquired the note that Keim had any interest in it. Lee v. Turner, 89 Mo. 489; Dymock v. Railroad, 54 Mo. App. 400; Bank v. Bank, 71 Mo. 183; Neuhoff v. O'Reilly, 93 Mo. 164; Randolph on Commercial Paper, sec. 391; 18 Eng. and Am. Ency. Law (1 Ed.), 641; Dows v. Kidder, 84 N. Y. 121; Leigh Bros. v. Railroad, 58 Ala. 165; McNeal v. Bank, 46 N. Y. 325; Combs v. Chandler, 33 Ohio St. 178; Cosdsby v. Vandenberg, 101 U. S. 572; Shaw v. Railroad, 101 U. S. 565. (3) "It is settled by a multitude of decisions that the right to plead usury is a privilege personal to the debtor." The defense has been compared to that of infancy. 27 Am. and Eng. Ency. Law (1 Ed.), p. 949; Ransom v. Hayes, 39 Mo. 445; Benseley v. Homier, 42 Wis. 631; Lee v. Feamster, 21 W. Va. 108. (4) The more recent decisions of the Supreme Court of the State of Missouri in construing the force and effect of the act of the General Assembly of this State, approved April 21, 1891 (Laws 1891, p. 170), are to the effect that the right to plead usury "is a privilege conferred by statute upon the debtor alone, or upon him and his privies in estate or blood, but is unavailing to a stranger or creditor." Griebel v. Imboden, 158 Mo. 642; Vette v. Geist, 155 Mo. 34; Hill v. Taylor, 125 Mo. 331; Ransom v. Hayes, 39 Mo. 445; Bank v. Bank, 123 Ill. 510; Green v. Kemp, 13 Mass. 515; Jackson v. Dominick, 14 Johns. 435; Loyd v. Scott, 4 Pet. 205; Bank v. Com. Warehouse Co., 49 N. Y. 642; Frumbro v. Blizzard, 6 Gill (N. J.) 18; Pinnell v. Boyd, 33 N. J. Eq. 600; Jones on Mortgages (5 Ed.), secs. 644 and 1493; Sands v. Church, 6

N. Y. 347; Maher v. Lanfrom, 86 Ill. 513; Tyler on Usury, p. 403. (5) It is a well-established rule of law that a stranger to the transaction can not avail himself of the plea of usury. See cases above cited and also Webb on Usury, sec. 366, and Tyler on Usury, p. 403. (6) A purchaser of the equity of redemption can not plead usury. Webb on Usury, sec. 374; Loan Ass'n v. Heider, 55 Iowa 424; Ins. Co. v. Olmstead, 52 Iowa 354; Bank v. Bank, 123 Ill. 510; Mason v. Pierce, 31 N. E. 503; Cramer v. Lepper, 26 Ohio St. 59; Savings Institute v. Copland, 32 N. W. 95; Cain v. Gimon, 36 Ala. 168; Sellers v. Botsford, 11 Mich. 59; Bank v. Kimmell, 1 Mich. 84; Bank v. Collins, 27 Conn. 142. (7) It is well established by overwhelming authority and decisions of the courts of various States that a creditor can not avail himself of the plea of usury. Benseley v. Homier, 42 Wis. 631; Lee v. Feamster, 21 W. Va. 108; Baskin v. Calhoun, 45 Ala. 582; Barbour v. Tompkins, 31 W. Va. 410; Miller v. Clark, 37 Iowa 325; Adams v. Robertson, 37 Ill. 45; Carmichael v. Bodfish, 32 Iowa 418; Harbinson v. Harrell, 19 Ala. 753; Reading v. Weston, 7 Conn. 409. (8) An action in replevin is one *ex delicto* and not upon contract. Hecht v. Heimann, 81 Mo. App. 370. (9) Keim was not at the time of the institution of this suit a privy of Kuhn. There was neither privity of estate, blood nor contract between them, consequently Keim could not plead usury in this case. Bouvier's Law Dictionary, "Privy and Privity;" 19 Am. and Eng. Ency. Law (1 Ed.), p. 156; Burrell's Law Dictionary, "Privity;" Greenleaf on Evidence, sec. 189; Black's Law Dictionary, "Privies" and "Privity;" Anderson's Law Dictionary, "Privity;" Webster's Dictionary, "Privity;" Winfield on Adjudicated Words and Phrases, "Privy;" Cohn v. Osgood, 15 Barb. (N. Y.) 588.

*Carl Otto* for respondent.

(1) Replevin may be maintained without affidavit. Garth v. Caldwell, 72 Mo. 622; Pattison, Mo. Code Plead. (1901),

sec. 881; Keen v. Munger, 52 Mo. App. 663; Bingham v. Morrow, 25 Mo. App. 448; Hamilton v. Clark, 25 Mo. App. 432; 20 Am. and Eng. Ency Law (1 Ed.), p. 1081. (2) There was privity and it was conceded at the trial. State v. St. Louis, 145 Mo. 567; State v. Johnson, 123 Mo. 55; Haley v. Bagley, 37 Mo. 365; Crispen v. Hannavan, 50 Mo. 419. Keim could redeem from said pledge, not because he was a stranger, not because there was no privity, but because he was the owner, and because there was privity of estate.

GANTT, J.—The facts over which this litigation arose are few and simple.

Philip Keim, a citizen of St. Louis, a butcher by trade, in December, 1895, bought for full value before maturity one principal negotiable promissory note for $7,000 and ten interest notes for $210 each, all executed by the J. W. Stewart Real Estate Company, bearing date October 11, 1895, and payable to the order of Charles Kuhn, and by him indorsed in blank, and received the same into his possession from Kuhn.

These notes were secured by a first lien on three brick houses in the city, and were worth their face and interest. Afterwards, when one of the interest notes fell due, Keim, who kept the notes and deed of trust in a wrapper, took them all together to collect the interest as instructed by Kuhn, to Kuhn's real estate office, and having a number of purchases to make and having known Kuhn for some three years and having confidence in him, said to Kuhn, "I will leave these papers here till to-morrow," and Kuhn said, "All right. I will give you a receipt for them," and thereupon wrote and handed this receipt.

"St. Louis, 4-14-'96.

"Received of Philip Keim one deed of trust for seven thousand dollars and nine interest notes each $210.

"CHARLES KUHN."

Kuhn then in Keim's presence put the bundle of papers in his office safe.

Keim called the next day for his papers and was informed Kuhn was temporarily out of the city. He went three times, and about that time it was noised abroad that Kuhn had decamped, and thereupon he brought replevin for said papers, making Kuhn and John H. Vette defendants.

An order of delivery was made, and the sheriff took said notes from defendant Vette. Kuhn was served by leaving a copy of the writ at the usual place of abode of said Kuhn with a member of his family over the age of fifteen years, said Kuhn being the last defendant served. Kuhn has never since returned to the State. The petition stated the ownership by plaintiff of the notes and a specific description of them; that they were secured by deed of trust and described the mortgaged property; that plaintiff was entitled to the possession of the notes; that they were of the value of $7,000 and were wrongfully detained by defendants Vette and Kuhn; that they had not been seized under any process, execution or attachment against the property of plaintiff; that his cause of action had accrued within one year prior to the commencement of the suit and he was in danger of losing his said property unless it was taken out of the possession of the defendants, and prayed judgment for plaintiff.

To the petition was appended this affidavit:

"State of Missouri, }
City of St. Louis. } ss.

"Philip Keim, above named, being duly sworn, on his oath says that all the matters and things and each of them set forth in the foregoing statement are true.        PHILIP KEIM.

"Subscribed and sworn to before me this twenty-seventh day of April, 1896.

"My term expires June 28, 1897.

"(Seal)                    ENRIQUE PARMER,
                    "Notary Public, St. Louis, Mo."

Kuhn made default.   Vette's answer, omitting caption, was as follows:

"Comes now the above defendant and admits that at the time of the institution of this suit he was in possession of the notes and deed of trust mentioned in plaintiff's petition, *having lawfully and in good faith acquired the same for value* from the holder thereof, as security for a loan then and there made to such holder for $5,500 and eight per cent interest, without any notice of plaintiff's pretended claim thereto; and each and every other allegation in plaintiff's said petition contained, this defendant denies generally, and this defendant therefore asks judgment for the return of said notes and deed of trust to him, for damages for the detention thereof and for costs."

To which plaintiff replied, as follows:

"Now comes the above-named plaintiff and for a reply to the new matter contained in the answer of defendant says that he denies each and every allegation therein contained.

"Further replying to the new matter aforesaid and in said answer contained, this plaintiff says that Charles Kuhn had no title at the time or any other time to said paper and could not transfer any, all of which defendant well knew or by the exercise of ordinary diligence could have learned prior to and at the time of his alleged purchase.

"Further replying this plaintiff says that whatever transaction the defendant had with said Kuhn whereby he wrongfully obtained from said Kuhn the possession of the paper in the petition described was a loan and not a sale.   That then and there said loan was for the sum of fifty-five hundred dollars, and that defendant was by the terms of said loan to receive and charge interest for a greater amount than that allowed by law, and said loan was at the time when made and is affected with usury, and was and is illegal, and defendant has and had no right to the possession of said paper.

"Wherefore, and by reason of the premises, plaintiff

prays for judgment for the possession of the papers heretofore described, for costs and for such other and further relief as to the court may seem just and proper."

On the trial it was conceded in open court that the notes were of their face value, and that the question was, to whom did the notes belong?

On the part of defendant the evidence was that his business was loaning money; that when he was served with the writ in this case he was in possession of all the notes described in the petition; that he got them from Charles Kuhn, his codefendant; that on the fourteenth day of April, 1896, he loaned Kuhn $5,500 on these notes and took them as collateral. Said note and collateral agreement are as follows:

"St. Louis, April 14, 1896.

"Ten days after date I promise to pay to the order of J. H. Vette five thousand five hundred and no one-hundredths dollars, for value received, negotiable and payable without defalcation or discount at No. ——— street, St. Louis, Mo., with interest at rate of eight per cent. per annum from date until paid. If interest is not paid semi-annually, same to be added to principal and bear same rate of interest.

"$5,500.                                   CHARLES KUHN.

"Having executed my note, as above, and being desirous of securing the same, as well as all other debts and liabilities for which I am now bound, or until the maturity of said note, may become bound to said J. H. Vette do hereby pledge as collateral security for said note, and debts and liabilities ten notes—nine for $210 each and one for $7,000, made by J. W. Stewart Real Estate Company and payable to Charles Kuhn or order dated October 11, 1895, and agree to give additional security whenever the market value of the above collateral should decline, and on notification of said J. H. Vette, when notified. Now, in the event of the non-payment of this note at maturity, or the payment of any such other

obligation at maturity thereof, or in default of me giving such additional security when notified, the holder hereof is hereby invested with full authority to use, transfer, hypothecate, sell or convey the said property, or any part thereof, or to cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the holder hereof may deem best; and the holder of this note is authorized to purchase said collaterals when sold for his own protection, and the proceeds of such sale, transfer or hypothecation, shall be applied to the payment of the above note, together with all protests, damages, interest, costs and charges due on the note, or which may be incurred by reason of its non-payment when due, or in the execution of this power. Also, a commission of five per cent on the gross amount of said collaterals sold, the surplus, if any, after payment of the above note, together with all the charges above stated, shall be paid by the drawer of the above note, or at the election of the holder hereof, be paid on any other obligation of the drawer hereof, whether as principal debtor or otherwise, held by the holder hereof; and, if the proceeds of the above sale shall not be sufficient to pay the above note, the drawer hereof agrees to make good any deficit.

"CHARLES KUHN."

In answer to his counsel he stated he kept a set of books in his loan business. He identified certain books kept by his bookkeeper, Shortal. He was asked to refer to his books and state what he gave Kuhn on April 14, 1896, as consideration for the note of $5,500.

He said, "He [Kuhn] had a couple of matters with me that he took up that day . . . deeds of trust as well as I remember," one for $3,000, the other for $2,500. These had been pledged to him by Kuhn prior to this. He gave Kuhn these two papers, and Kuhn owed him some other money and paid him the cash over and above the $5,500. Kuhn was

a good customer. They had traveled together in Europe. He was cross-examined on his books and stated that when he began loaning to Kuhn that Kuhn said to him, "Now if I allow you interest at the rate of three per cent per month, will you be satisfied?" and Vette answered, "Anything you say will be satisfactory to me; that will be all right," and they continued business on this plan sometime.

Various items on his book were called to his attention with a view to ascertain what interest he charged Kuhn and tended to show in connection with the evidence of Shortal, the bookkeeper, and Vette, that Kuhn paid usurious interest on the $5,500 note, or the debt for which it was given, and the notes in suit placed as collateral.

Addressing ourselves now to the grounds for reversal.

I.   There is no merit in the objection made to the introduction of any evidence because, as counsel alleged, the affidavit to the petition was not in accordance with the statute or the rules of pleading. The affidavit covered every statement in the petition and the petition stated every fact which the statute requires to be stated in an affidavit as a condition to recovering the property and preventing defendant's retention of the property by giving bond. [Section 4463, R. S. 1899; section 4468, R. S. 1899.]

But independently of the affidavit the petition stated a good cause of action in replevin and the objection to evidence could only go to the sufficiency of the petition and as replevin can be maintained in this State without any affidavit, the circuit court properly disregarded the objection. [Eads v. Stephens, 63 Mo. 90.]

As pithily said by the St. Louis Court of Appeals in Oxley Stave Co. v. Whitson, 34 Mo. App. l. c. 628, "the affidavit is a mere auxiliary paper designed to effect the collateral and temporary purpose of changing the possession of the property during the pendency of the action. If there is a good petition in an action of replevin, there is a case in court with-

out such an affidavit; and if there is no petition in such an action, there is clearly no case in court even with such an affidavit."

II.   The evidence leaves absolutely no doubt that Keim was the owner of the notes on April 14, 1896, when he left them for safe-keeping with Kuhn, and he is entitled to them now unless Kuhn's act in hypothecating them to Vette has given the latter a valid lien thereon to satisfy Kuhn's note of that date to Vette.

The holder of a negotiable note indorsed in blank by the payee is prima facie the owner of it, and he is presumed to have taken it in good faith for value before maturity and without notice.   [Horton v. Bayne, 52 Mo. 531; Johnson v. McMurry, 72 Mo. 278; Fitzgerald v. Barker, 85 Mo. 13; Mayes v. Robinson, 93 Mo. 122.]

But when it is shown to have been originally obtained by fraud it then devolves upon the holder to establish that he came to its possession for value and in good faith.   [Henry v. Sneed, 99 Mo. 407; Hamilton v. Marks, 63 Mo. 167; Campbell v. Hoff, 129 Mo. 317.]

Defendant Vette acting upon this principle offered evidence that, on the same day Kuhn received it as a temporary depositary, he borrowed $5,500 from Vette and gave him the notes in suit as collateral; that he did not know plaintiff and had no knowledge of any infirmity in Kuhn's title to the notes. Thus far according to the well-settled principles of mercantile law his title would seem to be impregnable and he invokes the doctrine announced by this court in Lee v. Turner, 89 Mo. loc. cit. 494, that, "If the true owner of a negotiable note over due, or of a non-negotiable note, clothes another with the usual indicia of ownership, or with full power of disposition, and third persons are led into dealing with such apparent owner, they will be protected in their dealings. . . . . Their rights  .  .  .  are derived from the act of the real owner which precludes him from disputing, as against them,

the existence of the title or power, which, through negligence or mistaken confidence, he caused or allowed to be vested in the party making the conveyance." [McNeil v. Tenth Nat. Bk., 46 N. Y. 329; International Bank v. German Bank, 71 Mo. 197.]

But while under the evidence defendant Vette made a loan to Kuhn for $5,500 and took this note, secured by plaintiff's notes as collaterals, plaintiff insists that as Vette exacted and received usurious interest on said loan he thereby voided his only claim of title to plaintiff's notes which he took as a pledge for said loan, under the statute of this State, known as section 3710, Revised Statutes 1899, enacted in 1891 (Laws 1891, p. 170), which provides that, "In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal," and he was not a bona fide holder thereof.

On the trial in the circuit court plaintiff's right to assail this pledge of his notes on the ground of usury was not raised when the evidence was offered, and the cause was tried on the issue whether defendant exacted or received usury from Kuhn on the indebtedness for which he took plaintiff's notes as a pledge, but it was challenged when the instructions were offered on the ground that no one but Kuhn could make that defense.

Conceding, as we think must be done, that by his objections to the court's instructions which permitted the plaintiff to recover if Vette exacted usury of Kuhn in the debt for which he took plaintiff's notes as a pledge and by his excep-

tions to the denial of his own, defendant properly challenged the validity of the pledge as being usurious, the question is presented, did the circuit court err in so instructing? Keeping in view the relation of the parties to this suit it will be observed that when plaintiff closed his case he had established his ownership of and right to the possession of the notes and the burden had shifted to defendant to maintain his right to the possession. How did he do this? He offered in evidence a note executed to him by Kuhn and a pledge of plaintiff's notes as collateral security therefor, and evidence that he took the same in ignorance of plaintiff's ownership.

In a word, he assumed the burden of showing that he held a *valid pledge* of said notes. Plaintiff denied the validity of that transaction, and alleged that the pledge was "invalid and illegal" because Vette, who was endeavoring to maintain possession of the pledge, had been guilty of exacting usury in the debt for which he took it. Defendant Vette now claims plaintiff had no right to attack said pledge because plaintiff was not privy to the illegal transaction for which it was taken.

We are thus brought to a consideration of the effect of the statute and of those who can avail themselves of it.

That the Act of 1891 was an advanced step in this State in the direction of preventing usury, is apparent at a glance.

The statute is at once remedial and penal.

It is an established canon of construction that remedial statutes shall be liberally construed; that "it is the duty of judges to so construe the act as to suppress the mischief and advance the remedy." [Sutherland on Stat. Cons., sec. 409.]

It is impossible to read the Act of 1891 without perceiving that the Legislature intended to make a distinction between the penalty which should follow the taking of a note infected with usury and the taking of pledges and mortgages to secure usurious indebtedness.

In the one case the usurious interest paid is allowed to

Vol 167 mo—26

be credited upon the principal debt and when suit is brought on such note all unpaid usurious interest is forfeited, but when the enforcement or maintenance of the pledge given to secure an usurious debt is brought in question, the statute renders it *"invalid"* and *"illegal,"* if tainted with usury. It would subserve no good purpose to try to reconcile all that the courts have said in construing the various statutes on usury, but they are practically harmonious in holding that when the statute imposes a forfeiture without qualification, a contract violating it is illegal and void, and many courts hold that is so, even where the rights of innocent third parties are involved. Now section 3710, Revised Statutes 1899, is a clear, unambiguous statute and it makes the pledge or mortgage based upon usury "invalid and illegal." There is no room for construction unless the courts are to take upon themselves the prerogative of writing exceptions into the statute which the lawmakers refused to do. It is our duty to declare the law not to make it.

This section which we are considering makes void the mortgage or pledge, as said by Judge Bronson in Dix v. Van Wyck, 2 Hill 522, "without any reference to the source from which the objection comes, or the consequences which may follow."

The question here is one of title. The essential muniment in defendant's title is the pledge of these notes. If that pledge rests upon usury, the statute declares it illegal and invalid, or, as we commonly express it, void.

The existence of a valid pledge is the only obstacle to plaintiff's recovery. Under such a statute who shall say the true owner may not question the validity and legality of that pledge? Certainly there is no such exception in the statute. Under a similar statute is was held in Dix v. Van Wyck, supra, that a judgment creditor by selling the property of his debtor on execution may place himself in a situation to contest the validity of any prior lien or incumbrance affected by usury,

and when the mortgage and a sale under it had been introduced in evidence, in an action in replevin, the plaintiff was allowed to prove the usury in the mortgage debt and recover, the court holding that while a mere stranger could not officiously intermeddle in the matter, a creditor could not be regarded as a mere stranger.     To the same effect is Jackson v. Dominick, 14 Johns. 435.

In German Bank v. DeShon, 41 Arkansas loc. cit. 340, the Supreme Court of Arkansas, answering the argument that the law extended peculiar protection to innocent purchasers of negotiable instruments, said: "But there is one exception to this rule, and that is, when a statute declares a contract void, it gathers no vitality by its circulation in respect to the parties executing it, but it and the instrument evidencing it are void in the hands of every holder," citing numerous cases in the courts of last resort throughout the country, among others the Supreme Court of the United States.

In Harrold et al. v. Morgan, 66 Georgia l. c. 401, the Supreme Court of that State said: "This is a question of title, not one of accounting. . . . The imperative mandate of the law makes the deed void.     It is void from the beginning, and void without anything else being said or done."     [Claflin v. Boorum, 122 N. Y. 385.]

The distinction runs through the various cases; if the statute makes the contract void, it is invalid as to everybody whose rights are affected by it, and this statute is just as imperative and effectual to destroy a pledge founded upon usury as if the word void had been used.     [Sprague v. Rooney, 104 Mo. 359; Seidenbender v. Charles, 4 S. & R. 151; Williams v. Wall, 60 Mo. 318.]     We shall not be the first to hold that the true owner, whose property is sought to be taken from him by means of a mortgage or pledge which the statute declares to be "illegal and invalid," is a mere stranger who can not be heard to complain or inquire into its legality.     We hold that the plaintiff is not a stranger, and had a perfect right to

require the defendant to show a valid pledge of plaintiff's property before he could defeat plaintiff's right to recover the same.

Defendant, according to the verdict of the jury, was the party exacting the usury and can not hide behind the plea of innocent purchaser for value without notice. It is his own illegal act upon which the law stamps its condemnation, and it is through this invalid and illegal instrument he must make good his right to retain plaintiff's notes, which he obtained from the fraudulent bailee, Kuhn.

We know of no principle of law or morals which denies the owner of property the right to inquire and examine into the validity of any lien which is sought to be fastened upon his estate or property, especially, when as in this case, it is *in invitum*.

Nor is there any hardship in requiring the defendant in this case to comply with the statute against usury. Had he been content to have taken the interest which the laws of the State permit, hard as it would have been on plaintiff to have lost his notes through the fraudulent conduct of Kuhn, the defendant would have been protected in his pledge, but he can not complain that he can not enforce a pledge which the statute rendered illegal and invalid on account of his exacting usury in the debt for which he took it as security.

III. The objection to plaintiff's first instruction is without merit. There is nothing ambiguous about it or in any way calculated to mislead the jury. It was confined throughout to the usury, if any, received on the indebtedness of fifty-five hundred dollars for which defendant claimed the notes in suit as a pledge, and the second instruction is equally unobjectionable.

IV. The objection to the definition of usury in the third instruction, in that it told the jury that it consisted in the receiving or demanding interest greater in amount than eight per cent per annum on the principal, is no ground for reversal,

because in each of the two other instructions they were required to find that Vette received more than the lawful interest on the $5,500 transaction.

The mere abstract definition, though faulty, did not affect the issue which was submitted to them in the two instructions which covered the facts in evidence.

For the reasons already given in the second paragraph of this opinion, the court did not err in refusing defendant's second instruction, which declared plaintiff could not claim any advantage of usury which Vette may have charged or exacted of Kuhn, to defeat the pledge of the notes.

For the defendant the court gave the following instruction:

"The court instructs the jury that if they find from the evidence that Charles Kuhn, on the fourteenth day of April, 1896, delivered the note of $7,000, and interest notes, as well as the deed of trust shown in evidence, to the defendant John H. Vette as collateral security for a loan of $5,500, and that in return therefor the defendant then and there delivered to said Kuhn two other notes or securities in the sum of $5,425, and at the same time gave credit to said Kuhn for amounts due by said Kuhn to said Vette in excess of $75; and if the jury further find from the evidence that the defendant Vette did not receive from said Kuhn any payment or interest on account of the note of $5,500 read in evidence, or on account of the two notes aforesaid aggregating $5,425 or either of them, in excess of eight per cent per annum on said notes, or that said Vette at the times said notes or either of them were received, demanded from said Kuhn, and that said Kuhn at said times promised to pay said Vette, a rate of interest or payments on said notes, in excess of the rate of eight per cent per annum; then plaintiff can not recover herein on the ground of usury alleged in his reply."

This instruction in connection with those given for plaintiff fairly presented the law of the case to the jury.    No error

was committed in not giving those asked as to the receiving of usury on other transactions.

As already stated, the jury found for plaintiff and as it is not asserted that there was no evidence upon which the·jury could have properly so found, and there was no error in the instructions, the verdict of the jury must stand.

The judgment is affirmed.    All concur.