THE STATE EX REL. WILHELMINA FICHTNER v. GEORGE F. HAID ET AL., Judges of St. Louis Court of Appeals.—22 S. W. (2d) 1045.

Division Two, December 11, 1929.

*E. W. Nelson* and *Harry Carstarphen* for relator.

*Rendlen, White & Rendlen, William Diemer* and *Hilbert & Henderson* for respondents.

HENWOOD, C.—Our writ of certiorari brings here for review the record of the St. Louis Court of Appeals in the case of Wil-

helmina Fichtner, Appellant, v. Charles H. Mohr, J. S. Shackelford, Henry Gnuse, D. N. Hadfield and William Zipsie, Respondents, because of an alleged conflict between the opinion of that court (16 S. W. (2d) 739) and a controlling decision of this court. The opinion of the Court of Appeals follows:

"This was an action commenced by the plaintiff (appellant) against the defendants to recover the loss on a deposit made by her in the Farmers Bank of Durham, Durham, Missouri, the respondents being the directors of said bank. The petition alleged that at all times during the years 1921 and 1922, and for a long time prior thereto, said bank was wholly insolvent, that each of the defendants was well aware of the insolvent condition of said bank during all the time of its insolvency and that each of the defendants well knew during all of the years of 1921 and 1922, and for a long time prior thereto, that the said bank was wholly insolvent and unable to pay its legal obligations. The petition further alleges that on April 25, 1922, she deposited in said bank the sum of $200 and received from the bank its certificate of deposit therefor, which certificate recited that said sum was payable to the order of plaintiff in current funds three-twelve months after date with interest at the rate of five per cent per annum; that on or about August 31, 1922, the doors of said bank were closed because of insolvency and that the affairs of the bank were taken over by the Finance Department of the State of Missouri for the purpose of liquidation; that plaintiff made due demand for her money; that she has received various sums at intervals, aggregating $80.20, the last payment being as of date December 27, 1927, upon which said last date the last distribution dividend was made and paid and final liquidation of said bank was effected by the Finance Commissioner of the State of Missouri and that there is now due her the sum of $119.80 with interest on the entire amount deposited, as aforesaid, from April 15, 1922, to the time of the closing of said bank. Plaintiff further states that the amount plaintiff is entitled to recover hereunder is and was and first became capable of ascertainment on December 27, 1927, and she prayed for the recovery of $119.80, the balance due on the certificate of deposit with five per cent interest on the entire amount of $200 from April 15, 1922, until the closing of the bank, and for six per cent interest from the date of the closing of the bank. .

"The defendants filed an amended special demurrer setting up (1) that the cause of action accrued more than five years before the filing of the petition and was, therefore, barred by the five-year Statute of Limitations (Sec. 1317, R. S. 1919), and (2) that the cause of action accrued more than three years before the filing

of the petition and that it is barred by the three-year Statute of Limitations (Sec. 1318, R. S. 1919).

"The demurrer was sustained and, the plaintiff declining to amend her petition or plead further, judgment was entered in favor of the defendants.

"Plaintiff here contends that the petition shows on its face that it is not barred by the limitations of either Section 1317 or Section 1318, Revised Statutes 1919; that the liability created by the provision of Section 27, Article 12, of the Constitution, and Sections 11763 and 11764, Revised Statutes 1919, is a contractual one, and, therefore, the applicable limitation is that fixed by Section 1315, Revised Statutes 1919.

"Is the liability created as aforesaid a penal or contractual one?

"In the case of Eads v. Orcutt, 79 Mo. App. 511, 519, 520 (decided in 1899), the court said:

" 'But when the statute imposes a liability on the corporation officer which was not his, as a consequence of his doing a forbidden act, it is a penalty (in a local sense), notwithstanding it may afford a remedy to the party complaining. It would be so held by the Supreme Court. [Guerney v. Moore, 131 Mo. 672; Kritzer v. Woodson, 19 Mo. 327; Cable v. McCune, 26 Mo. 371.] . . . Our statute prohibits receiving deposits, or contracting debts, when the bank is "insolvent or in failing circumstances" and provides that any officer "violating the provisions of this section shall be individually responsible for such deposits so received and all such debts so contracted." This clearly, though providing a remedy for the creditor and in that respect remedial, inflicts a punishment on the officer for his transgression by making him pay the debt of the corporation, which he did not owe. It will be observed that the statute is but a legislative compliance with the Constitution of the State, and that the language of each is in the imperative, commanding what shall not be done and prescribing onerous consequences. We are satisfied that the civil liability thus put upon the officers is a penalty.' [White v. Poole, 220 Mo. App. 1. c. 988, 272 S. W. 1028.]

"In the case of Ivie v. Bailey (Mo.), 5 S. W. (2d) 1. c. 53, the court has this to say with reference to the above constitutional provision: 'The latter portion of the section in considering its nature and the purpose of its adoption should be construed as creating a civil liability.'

"We think there can be no question of the soundness of the conclusion reached in the above cases. Under the constitutional provision and statutes involved here the liability is not directed against all stockholders alike, but is directed against certain persons, some of whom may not be stockholders, so that, in the singling out of the persons named in those provisions, it seems clear that the

statute is a penal one, enforceable as a civil action. The usual statutory provisions fixing double liability upon stockholders (as in the cases relied upon by the appellant) apply to all stockholders and could not and do not apply to non-stockholders.

"The appellant argues, however, that the use of the word 'debts' in our constitutional provision and statutes shows an intention to create an obligation contractual in character. A reading of the constitutional provision and the sections of the statute discloses, however, that there are two subjects treated of; in the constitutional provision it is stated that if the persons named shall 'assent to the reception of deposits, or creation of debts,' and subsequently provides that the persons named 'shall be individually responsible for such deposits so received and all such debts so created with his assent.' These same provisions, in substantially the same words, appear in the two sections of the statutes referred to. The word 'debt' is not used to describe deposits, but an obligation of the bank other than a deposit. Nor does it refer to such obligation as one owing by the director, or other officer, but is descriptive of the obligation assumed by the bank with the assent of the director or other officer. In no wise can they be said to indicate an intention to declare the punishment prescribed as being in any wise a contractual obligation so far as the offenders are concerned.

"In the case of Diversey v. Smith, 103 Ill. 378, 394, 395, in which the question arose as to whether the statute there in question created a liability that was penal in its nature or that was contractual in character, the court, after referring to a number of cases involving statutes upon the liability of stockholders of corporations, says:

" 'In short, there the debts for which the stockholders were held liable were contracted pursuant to law, while here those for which they are sought to be held liable were contracted in violation of law. . . . Here, the statute in effect says the thing shall not be done, and if it is done, the trustees and corporators shall be liable, etc. In all the cases referred to the statute says the thing may be done, and the stockholders, etc., shall be liable, either absolutely or until some subsequent thing shall be done. In the one case the liability is in consequence of violating the law, or suffering it to be violated; in the other the liability is incurred in strict compliance with the law—in short, in one case the liability is for a wrong done—a tort; in the other it is upon contract.'

"The appellant next insists, in effect, that notwithstanding the constitutional provision and sections of the statute may be penal in their nature, the two sections of the statute of limitations relied upon by the plaintiff (defendants) are not conclusive because they are limited by the provisions of the opening section of our Statute of Limitations which is as follows:

" 'Sec. 1315. Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; Provided, that for the purposes of this article, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered and full and complete relief obtained.'

"Finding as we have that the provisions are in character penal but enforceable as civil liability, we think there can be no questions that Sections 1317 and 1318 are subject to the proviso forming part of Section 1315. Yet we do not see how this can aid the plaintiff in the present action. The plaintiff would have us construe Section 1315 as if it provided in the instant case that the limitation should not begin to operate until the actual loss, after liquidation, is found. We are bound to ascertain and give effect to the intention of the Legislature as expressed in the statute, and where the language used is plain, it must be given effect by the courts. [Lincoln University v. Hackmann, 295 Mo. 1. c. 125, 243 S. W. 320; DeHart v. School District, 214 Mo. App. 1. c. 657, 263 S. W. 242.] We do not think the section is susceptible of such construction.

"Nor are we convinced that the respondents are correct in their theory in asserting that the statute began to run upon the making of the deposit in the alleged insolvent bank.

"The language of the statute is that the cause of action shall not be deemed to accrue when the wrong is done, or the technical breach of contract or duty occurs (as respondents contend), but when the damage therefrom is sustained and is capable of 'ascertainment.' It is necessary therefore, to the operation of the statute against a claim, that the damage resulting from the breach is both sustained and capable of ascertainment. According to our view the proper construction of the section depends upon the word 'ascertainment.' That word has been held to mean, 'To make certain by examination; to find out.' The word 'ascertain' is held to have two meanings: (1) known; (2) made certain. [L. R. 2 P. & D. 365.]

"In the case of Brown v. Lyddy (N. Y.), 11 Hun, 451, 456, that word is held to mean 'to make sure or certain; to fix; to establish; to determine; to settle.'

"It seems to us, therefore, that the time when the statute begins to operate against a claim under the constitutional and statutory provisions aforesaid, is the date when it has been discovered or made known to the public that the officers or agents have vio-

lated the provisions denouncing the reception of deposits when the bank is in a failing condition or insolvent.

"The allegations of the petition are that on or about August 31, 1922, the doors of said bank were closed because of the insolvency of the bank and the affairs were then taken over by the Finance Department of the State for the purpose of liquidation. It was then that the damage resulting from violation of the prohibition was sustained and was capable of ascertainment or discovery, and it was at that time that the statute of limitations, Section 1318, began to run against the claim, while this suit was not instituted until August 29, 1928.

"It seems clear that by the constitutional provision and the sections of the statutes involved, it was intended to make the directors liable for the whole amount of deposits received in violation of those provisions, and that the depositors are entitled to maintain an action for any balance due them on such deposits (White v. Poole (Mo. App.), 272 S. W. l. c. 1028) immediately upon the determination or ascertainment of the fact of the insolvency.

"The judgment of the circuit court is affirmed."

In substance, the Court of Appeals holds that plaintiff's cause of action is an action for the recovery of a statutory penalty, as authorized by Section 27 of Article XII of the Constitution and Section 11763, Revised Statutes 1919; that said cause of action accrued, and the damage involved was sustained and was capable of ascertainment, within the meaning of Section 1315, Revised Statutes 1919, on August 31, 1922, when it became publicly known that the bank was insolvent; that the three-year Statute of Limitations, Section 1318, Revised Statutes 1919, began to run against said cause of action at the time it accrued, on August 31, 1922; and that said cause of action was barred by limitation long before August 29, 1928, when plaintiff filed her petition.

I. Counsel for relator contend that the ruling of the Court of Appeals, that plaintiff's cause of action accrued, and that her damage was sustained and was capable of ascertainment, when it became publicly known that the bank was insolvent, is in conflict with the decision of this court in the recent case of Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576. Counsel say, in their brief, that the Wahl case "deals with the term *ascertainment* in its application to statute, Section 1315, under facts involving final liquidation of a defunct bank, and holds and declares the law there that limitations begin to run when the amount of money not paid by the defunct bank is *fixed*, that is, after payments by liquidation are complete and the balance is determined,"

Manifestly, counsel have failed to distinguish between the ruling of this court and a quotation from the plaintiff's petition in the Wahl case, as the language referred to by counsel was used by the court only in quoting the allegations of the plaintiff's petition in that case. In that case, the plaintiff, a director of the Pemiscot County Bank, sued two other directors of the bank on two separate agreements of the said defendants to hold him harmless from any loss on his loans to the bank, and to repay to him any loss on said loans, whenever the affairs of the bank were finally settled and the exact amount of his loss was determined. As to the contention of the defendants that the plaintiff's petition disclosed that his causes of action were barred by the five-year Statute of Limitation, the opinion of this court reads as follows:

"Defendants claim that the petition shows upon its face that the causes of action alleged in both counts of the petition are barred by the five-year statute of limitation (Sec. 1317, R. S. 1919), and, being barred by that statute, they can only be revived by a subsequent written acknowledgment or promise subscribed by the defendants (Sec. 1338, R. S. 1919), the making of which written acknowledgment or promise is not alleged in either count of the petition. While the promises and agreements relied upon by plaintiff are alleged to have been made by defendants in 1913, yet the time for the performance of said agreements, and the time for the ascertainment of the amounts due plaintiff thereunder, is alleged to be 'whenever the Pemiscot County Bank's affairs were straightened out and it was ascertained how much, if any, of the money so put up by the plaintiff had not been repaid by the Pemiscot County Bank.' The time for the performance of the alleged agreements had not arrived at the time of the commencement of plaintiff's suit, for it is further alleged in the petition that the affairs of the Pemiscot County Bank were then in process of liquidation and its affairs were being administered by a receiver. Defendants have apparently overlooked Section 1315, Revised Statutes 1919, of our Statute of Limitations, which provides that— 'civil actions . . . can only be commenced within the periods prescribed in the following section, *after the causes of action shall have accrued*: Provided, that for the purposes of this article, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, *but when the damage resulting therefrom is sustained and is capable of ascertainment.*' (Italics ours.)

"As we have said in the preceding paragraph of this opinion, if defendants repudiated their agreements before the time for performance had arrived, as alleged in the petition, plaintiff then had the option to treat the agreements as broken and at once bring an action for recovery of his damages, or to treat the repudiation as

138

inoperative and await the time when the agreements are to be performed, and then hold defendants for all the consequences of non-performance. [13 C. J. 701.] Plaintiff elected to treat the alleged agreements as broken at the time of their repudiation by defendants, which is alleged to have occurred in March, 1923, and he commenced the instant action in October, 1923. We see no room for the application of the statute of limitations under the mere allegation of the petition.''

Thus it appears that the plaintiff's causes of action in the Wahl case were not only based upon contractual obligations of the defendants, but upon an anticipatory breach thereof; that the court referred to the provisions of Section 1315, Revised Statutes 1919, merely for the purpose of pointing out that the five-year Statute of Limitation (Sec. 1317) would not begin to run against the plaintiff's causes of action until the time for the performance of the defendants' said contractual obligations had arrived; and that, inasmuch as the plaintiff had elected to treat said obligations as broken before the time for performance had arrived, there was no occasion for the court to construe any of the provisions of Section 1315, or any other provision contained in our statutes of limitation. Indeed, the court said: *"We see no room for the application of the statute of limitations under the mere allegations of the petition."* It seems perfectly clear, therefore, that the opinion of the Court of Appeals is not in conflict with the decision of this court in the Wahl case. Nor does it conflict with any other controlling decision of this court, so far as we are advised.

II. Counsel suggest various reasons why, in their opinion, the ruling of the Court of Appeals is unsound. But, it is not our province to consider these suggestions in a certiorari proceeding. "As long as said court promulgated no rule of law which could be said to conflict with a former ruling of this court on the same or 'similar facts, it had the inherent right to determine the issues involved, whether its rulings be right or wrong." [State ex rel. v. Allen (Mo. Sup.), 256 S. W. l. c. 1052.]

It follows that our writ was improvidently issued and should be quashed. It is so ordered. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.