LITTLE, Respondent, v. HOOKER STEAM PUMP COMPANY et al., Defendants, FARRAR, Appellant.

### St. Louis Court of Appeals, February 5, 1907.

#### (Opinion by Bland, P. J.)

1. **PRACTICE: Opinion of Trial Judge: Verdict.** An opinion filed by the trial judge cannot be treated as a special finding of facts on appeal; a general verdict with substantial evidence to support it will not be disturbed by the appellate court, regardless of an opinion by the trial court.

2. **USURY: Commissions: Agent.** Under section 3709, Revised Statutes of 1899, a commission exacted for loaning money in excess of the legal interest is usurious and should be deducted from the amount recovered in an action for the money loaned; this is true although the commission is charged by the agent of the lender and without the knowledge of his principal.

#### (Concurring Opinion by Nortoni, J.)

3. ———: **Penal Statute: Strict Construction.** Section 3709, Revised Statutes of 1899, is in its nature penal, works a forfeiture of contract rights, and should be strictly construed; it ought not to be construed so as to affect with the taint of usury a loan in which the agent of the lender charged a commission in excess of the legal rate of interest without the knowledge of his principal.

4. ———: ———: ———. While it is the duty of this court to follow the last utterance of the Supreme Court in construing section 3709, Revised Statutes of 1899, in case of Western Storage Co. v. Glasner, 169 Mo. 38, the decision in this case by following it is contrary to a previous decision of the Supreme Court in the case of Landis v. Saxon, 89 Mo. 375, and the case is therefore certified to the Supreme Court.

Appeal from St. Louis City Circuit Court.—*Hon. C. Orrick Bishop,* Judge.

REVERSED AND REMANDED WITH DIRECTIONS, AND TRANS-
FERRED TO SUPREME COURT.

*Christy M. Farrar* and *Robert L. McLaran* for ap-
pellant.

(1) The test of usury in a contract is whether it
would, if performed, result in securing a greater rate of
profit on the subject-matter than is allowed by law.
Webb on Usury, par. 29. Usury may be pleaded in de-
fense of civil actions in this State, and same in excess of
eight per cent per annum shall be deemed payment and
credited upon the principal debt, whether paid as com-
mission or brokerage, or as payment upon the principal,
or as interest on said indebtedness, and all the costs of
the action shall be taxed against the party guilty of
exacting usurious interest. R. S. 1899, sec. 3709; Wes-
tern Storage Co. v. Glasner, 169 Mo. 38, 68 S. W. 617.
(2) Authority to make a usurious loan will be pre-
sumed where the agency is a general, not a special, one,
without actual knowledge of the principal of the usury
received. Webb on Usury, par. 89; Rogers v. Bucking-
ham, 33 Conn. 81; Stein v. Swensen, 46 Minn. 360; Aus-
tin v. Harmington, 28 Vt. 130; Brown v. Archer, 62 Mo.
App. 277; Siegelman v. Jones, 103 Mo. 172.

*Joseph Barton* for respondent.

(1) The fact that the agent of the lender or cred-
itor, without the knowledge of his principal, exacts a
commission from the borrower or debtor as a condition
of the loan or extension of credit, the lender or creditor
receiving no part of such commission, either directly or
indirectly, will not render the transaction usurious. 29
Am. and Eng. Ency. Law (2 Ed.), 502; Condit v. Bald-
win, 21 Barbour (N. Y.) 181; Stillman v. Northrupp,
109 N. Y. 473; Call v. Palmer, 116 U. S. 98. (2) An

agent for loaning money may take a reasonable commission from the borrower, even with the knowledge of the lender, and still the transaction will not be usurious, though the amount of interest reserved to the lender be the full lawful interest. Landis v. Saxton, 89 Mo. 380.

BLAND, P. J.—Suit on two promissory notes, commenced before a justice of the peace and in due course appealed to the St. Louis Circuit Court by Sallie C. Farrar, the other defendants not joining in the appeal. The cause was tried *de novo* in the circuit court without the aid of a jury. Judgment was rendered for plaintiff on both notes. The defense was usury. The principal of one of the notes was four hundred and fifty dollars and the other three hundred and sixty dollars, and both were given for borrowed money. The loans were negotiated by W. C. Farrar, a son of Sallie C. Farrar, through John Mackler, a loan agent or broker, and the general agent of plaintiff for the loaning of her money. On the note for four hundred and fifty dollars, Mackler testified he charged a commission of twenty-five dollars. Defendant's evidence tends to show he charged a commission of fifty dollars, and the preponderance of the evidence on this charge is with the defendant. In regard to the three-hundred-and-sixty-dollar note, Mackler testified Farrar proposed to pay him a commission of thirty dollars; that he made the loan and took out thirty dollars for his commission. The money loaned in each instance was the plaintiff's and the notes were indorsed and turned over to her. She received no part of the commissions paid to Mackler and had no knowledge or information that they were paid until after the suit was brought and the defense of usury was interposed, though she testified she paid Mackler nothing for his services as her agent. She had a private drawer in Mackler's safe, to which drawer both she and Mackler had a key. She testified that Mackler had made a good

many loans for her, and the notes securing such loans were kept in her private drawer in Mackler's safe and the credits of payments were entered upon these notes by herself or Mackler as they were made, and when partial payments were made to Mackler he would notify her and she would go to his office and get the check for the money; that when she had money to loan, Mackler loaned it for her and she entrusted the loaning of her money entirely to him.

1. No declarations of law were asked or given. The learned circuit judge prepared and filed an opinion in the case, which is copied in the abstract of the record, and we are asked by defendant to treat this opinion as a special finding of the facts by the judge. In regard to an opinion filed in a case by the trial judge, the Supreme Court, in Mead v. Spaulding, 94 Mo. 1. c. 47, said: "Counsel for the plaintiff in error seems to suppose we will look to the written opinion of the trial court to learn how the disputed facts were found. We find no such opinion in the transcript. Even if incorporated in the bill of exceptions, it would be no part of the record. Such opinion cannot be made to take the place of instructions, or a finding of facts given as an instruction. The opinion of the trial court may be cited and used in the consideration of the case presented by the record, and in that respect is often of great value to us; but it is no part of the record upon which the case must be determined in this court."

The verdict is a general one and is not subject to review on appeal (Weilandy et al. v. Lemuel, 47 Mo. 322; Bray v. Kremp, 113 Mo. 552), and it is not enough to authorize the court to interfere with a general verdict whether found by the court sitting as a jury or by a jury, that the evidence, in the opinion of the appellate court is insufficient; if there is any substantial evidence to support it, it must stand. [James v. Life Assn., 148 Mo. 1, 49 S. W. 978.]

2. On the trial defendant introduced evidence tending to show the three-hundred-and-sixty-dollar note was delivered to Mackler as security for the payment of certain bank checks delivered to him at the same time. Plaintiff's evidence tends to show the note was given for an out-and-out loan and the court so found, therefore, this issue is not reviewable by us. It is shown by plaintiff's evidence that Mackler was her agent in making the loan. The notes are for the highest legal rate of interest (eight per cent) and it is not controverted that a commission was exacted by Mackler for each loan. The question, therefore, is whether or not the notes were tainted with usury in the hands of plaintiff, who had no knowledge of the exaction of the commissions and received none of the benefits.

In Landis v. Saxon, 89 Mo. l. c. 380, Judge BLACK said: "An agent for loaning money may take a reasonable commission from the borrower, even with the knowledge of the lender, and still the transaction will not be usurious, though the amount of interest reserved to the lender be the full lawful interest." This ruling is supported by Stillman v. Northrup et al., 109 N. Y. 473, by Call v. Palmer, 116 U. S. 98, and by the text, paragraph 2, page 502, volume 29 (2 Ed.), American and English Ency. of Law, and by the many cases, cited in a note, from the States of Arkansas, Illinois, Iowa, Minnesota, Mississippi, New Jersey, New York, Oregon, Texas and Vermont. Such was the law in this State prior to 1891, when an act was passed by the Legislature, making a radical change in the law of usury. There are two sections of the act. The first (now section 3709, R. S. 1899) reads as follows:

"Usury may be pleaded as a defense in civil actions in the courts of this State, and upon proof that usurious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payment, shall be credited upon the principal debt, and all costs of the action

shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commission or brokerage, or as payment upon the principal, or as interest on said indebtedness."

In Western Storage & Warehouse Co. v. Glasner, 169 Mo. l. c. 47, MARSHALL, J., said: "It will thus be observed that under the law, all payments, whether made in the shape of interest, or commissions or brokerage or as principal, may be deducted from the sum actually loaned with legal interest added, and if the sum so paid in any of the said shapes or forms, or by whatever name it might be called, equals the loan and legal interest, the debt is considered paid and discharged."

The commission exacted by Mackler of fifty dollars on the one and thirty dollars on the other of the notes, if legal interest be added, aggregates eighty-seven dollars and sixty cents. This amount the learned trial judge failed to deduct from the total amount of four hundred and ninety-seven dollars and sixty-seven cents he found to be due on the two notes. The statute is imperative that the deduction of the commission and added interest be made. If it had been made by the trial court, the judgment would have been for four hundred and ten dollars and seven cents. It is therefore considered that the judgment be reversed and the cause remanded with directions to the circuit court to enter judgment for plaintiff for four hundred and ten dollars and seven cents, to bear interest at the rate of eight per cent per annum from the date of the entry of the original judgment, to-wit, November 20, 1905, and that all the costs in the lower court be taxed against plaintiff. All concur; *Nortoni, J.,* in a separate opinion.

122 App—40

SEPARATE CONCURRING OPINION.

NORTONI, J.—I concur in the opinon in this case for no other reason than that under the Constitution of Missouri, it is my duty to do so, inasmuch as the decision of the Supreme Court of the State in Western Storage Co. v. Glasner, 169 Mo. 38, 68 S. W. 917, seems to be in point and it is a controlling authority on this court. The case of Landis v. Saxon, 89 Mo. 375, is not mentioned nor referred to therein, however. Prior to the decision of the Western Storage Company case, I had always understood the law as stated by Judge BLACK in Landis v. Saxon, supra, and I did not understand that the statute of 1891, now section 3709, Revised Statutes 1899, operated upon a transaction of the nature here involved so as to render the lender who was absolutely guiltless and without any knowledge of the agent's commissions, chargeable with usury on the mere fact that the agent had received a commission from the borrower on the side, for his services in negotiating the loan. Indeed, I have found nothing to persuade me to the contrary either in the statute referred to nor in the opinion in Western Storage Co. v. Glasner, supra. It is said in that opinion at page 48: "The statute is leveled against taking usurious interest in any form and it *expressly* recognizes and brings within its contemplation the form of collecting such excess as commission or brokerage, *whether the same be for the benefit of the lender or any agent, broker or other person employed by the lender.*" Although I have endeavored with care to do so, I can find no such *express* provision in the statute. I agree that "the statute is leveled against the taking of usurious interest in any form" so far as the lender is concerned, and I agree that "it expressly recognizes and brings within its condemnation the form of collecting such excess as commission or brokerage" when done under that guise or in such name by the lender, and

the lender is receiving the benefit of the excess charges so taken in the name of brokerage or commissions, and probably when taken by the agent with the lender's knowledge or consent, but I do not agree that the same *"expressly"* condemns the contract and forfeits the right of the lender "whether the same be for the benefit of . . . any agent, broker or other person employed by the lender," unless the lender has some knowledge of the broker's or agent's offense. The result is not in accord with my notion of those ends of justice and perfection sought to be attained in the administration of the law. The statute is in its nature penal and works a forfeiture of contract rights. It should therefore, in my humble opinion, be strictly construed. [26 Amer. and Eng. Ency. Law (2 Ed.), 658; Casey v. Transit Co., 116 Mo. App. 235, 91 S. W. 419.] Upon a strict construction, its provisions are leveled against the practice of the lender in exacting usury in the name of brokerage or commission. The statute reads as follows:

"Usury may be pleaded as a defense in civil actions in the courts of this State, and upon proof that usurious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payable, shall be credited upon the principal debt, and all costs of the action shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments or usurious interest made by the debtor, whether paid as commissions or brokerage, or as payment upon the principal or as interest on said indebtedness." [Sec. 3709, R. S. 1899.]

The proper construction of the concluding sentence of the statute, when read in the light of that which precedes, is that upon which the sense must be taken. This sentence is as follows: "after deducting therefrom *all payments of usurious interest* made by the debtor, whether

paid as commissions or brokerage, or as payment upon the principal, or as interest on said indebtedness." The matter contemplated, then, and to which the words "commissions" or "brokerage" refer, is the *"payment of usurious interest;"* in other words, "payment of . . . interest." Now, interest is that which is paid by the borrower to the lender for the use and forbearance of the loan and is not a commission or brokerage paid to the agent. It therefore appears quite clear to my mind that what the legislators intended to condemn was the taking of an extra per cent as "payment of usurious interest" by the lender under the name or pretext of "commissions" or "brokerage," — or "as payment on the principal" — or "as interest on said indebtedness," all of which terms indicate an amount reserved by the lender under the several pretexts mentioned for the loan or forbearance, otherwise they would not be spoken of as "payment of . . . interest," or as "payment on the principal," or as "interest on said indebtedness," which could only be brought about by the act of the lender or his authorized agent in collecting and crediting the same on the debt as interest or payment thereon, or otherwise as mentioned by the statute, for it is only the lender or his authorized agent who would so apply the same. These terms certainly do not refer to the per cent or charge of the agent which is taken by him for services in negotiating the loan, for in no sense can the agent's per cent, taken as his compensation, to be appropriated to his own use, be considered by the parties at the time as a "payment of interest" or otherwise than as compensation to the agent. The mere employment of the word "brokerage" or "commission" in the statute and the fact that such words usually refer to a per cent charged by a middleman or agent for service rendered, certainly should not influence the court to adjudge the rights of an innocent party forfeited under the penal provisions above quoted, in view of the well-known prac-

tice of some money-lenders to make a charge on the side
and denominate the same as brokerage or commissions
when lending their private funds, which, in truth,
amounts to usury pure and simple. It appears to me
that this latter class of operations were those intended
to be condemned by the Legislature in this enactment.
At any rate, a penal statute must be construed strictly
in effectuating its purposes, as strictly as is consonant
with the mischief sought to be remedied, and its provis-
ions should not be extended in any case so as to include
persons or rights not clearly falling within its terms or
manifest spirit. In view of the finding of fact by the
learned trial judge, which stands as a general verdict,
the plaintiff lender had no knowledge that the agent ex-
acted commission in this case and there is nothing to
show that she placed her funds in his hands and put him
forward as her agent to lend the same with the under-
standing or knowledge that he was to exact commissions
from the borrower, as appeared in the case of Brown v.
Archer, 62 Mo. App. 277, in which case the president
of the lending company actually received a salary for
approving such applications for loans as the agent sub-
mitted, at the same time knowing the agent to be en-
gaged in collecting commissions on the side from the
borrower. It seems to me that the terms of this statute
must be extended beyond its letter or spirit by construc-
tion in order to inflict its penalties upon this plaintiff
who stands as an innocent lender in good faith without
fault, who neither assented to nor had knowledge of the
exaction of commissions by the agent. To so extend this
penal statute and forfeit the rights and inflict the pen-
alty of paying the costs of suit upon an innocent party
on the application of the mere principle of agency, is
to apply the principle of agency, in my own opinion,
quite beyond the ends sought to be attained by a just
administration of the law in such cases. Now, as a
proposition, it is true in the law that authority to violate

the law will never be presumed. Among the presumptions of law, there lies, first, at the very threshold of its administration, the great and sound fundamental principle of presumptive correct conduct, always on the part of all concerned. From this it follows that the mere showing of authority in the agent to lend one's money carries with it only, in the absence of a showing to the contrary, authority to exercise such agency or power in a lawful manner, and authority to lend money at a legal rate of interest does not imply authority to violate the law by lending at a usurious rate. [Call v. Palmer, 116 U. S. 98-102.] From this it necessarily follows that the plaintiff, Mrs. Little, not having expressly authorized her agent to collect usurious commissions, she cannot be held on the principle of agency to have authorized the agent by implication of law, to do so, so as to bring the transaction to which she in no manner had given her consent and of which she had no knowledge, within the influence of the penal statutes quoted, whereby her rights, those of an innocent party, are forfeited. In such cases the law is well settled that the agents are constructively in collusion with the borrowers and the lenders are not *particeps criminis.* [Webb on Usury (1899), sec. 93.] In a case before the Supreme Court of the United States, very similar to the case now in judgment, involving the Iowa statutes on interest and usury, very similar to our own, that august tribunal said, in holding to the doctrine, the justness of which I commend: "These decisions seem to be founded on plain principles of justice and right, for when two persons, the agent and borrower, conspire together for their own profit, to violate the law, how can punishment for their acts be justly imposed on an innocent third party, the lender?" [Call v. Palmer, 116 U. S. 98-102.]

The doctrine that a penal statute should be extended on the mere principle of agency, over the presumption of law that such agency was not for an unlawful

purpose, so as to include and forfeit the rights of innocent third parties, is so obnoxious to my own sense of justice as to constitute my apology for these comments on the case. While section 6 of the amendment to the Constitution, adopted November, 1884, provides that "the last previous ruling of the Supreme Court on any question of law or equity shall in all cases be the controlling authority in such Courts of Appeals," the same section provides that "when any one of such Courts of Appeals shall in any case or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of such Courts of Appeals or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterwards, certify and transfer such cause and the original transcript therein to the Supreme Court," etc. I am of the opinion, and I deem the decision in this case contrary to a previous decision of the Supreme Court in the case of Landis v. Saxon, 89 Mo. 375, and therefore respectfully ask that the cause and the original transcript thereof be certified to that court for final determination.