JOHN VROOM, APPELLANT, v. MAUD THOMPSON, EXECUTRIX OF THE ESTATE OF MILTON THOMPSON, DECEASED, RESPONDENT.—55 S. W. (2d) 1024.

Kansas City Court of Appeals. November 21, 1932.

*Henry S. Julian* for appellant.

*Charles M. Bush* for respondent.

TRIMBLE, P. J.—In July, 1926, plaintiff deposited $5400 in the Federal Trust Company, a banking corporation located in Kansas City, Missouri. On November 12, 1926, said trust company failed, and its assets were placed in the hands of S. L. Cantley, State Commissioner of Finance, for liquidation. Before, at the time, and continuously after the deposit was made, Milton Thompson was a duly elected, qualified and acting director of said company and remained so until the failure occurred. In the process of liquidation, plaintiff received from the Finance Commissioner the sum of $1134, leaving due said depositor a balance of $4266.

On August 20, 1930, more than three, but less than five, years after the Trust Company failed, plaintiff brought this suit against said Director Thompson to recover the balance of the deposit remaining due and thus lost to him, alleging that said Director Thompson, at and before the time of the deposit and thereafter, "knew, or by the exercise of reasonable care could have known, that said Federal Trust Company was in fact insolvent and in failing circumstances," and alleging further that "because of the knowledge of said insolvency, on the part of this defendant as director thereof, a cause of action has accrued in favor of this plaintiff and against the defendant for said sum of money so lost to plaintiff as aforesaid."

Demurrer to the petition was filed based on two grounds, (1) that the petition did not state facts sufficient to constitute a cause of action, and (2) that the cause of action, if any, set forth in plaintiff's petition, accrued more than three years before the filing of the petition and is barred by the three-year Statute of Limitations. The trial court sustained the demurrer upon the theory that the action was for a *penalty* and hence the three-year Statute of Limitations (Sec. 1318, R. S. Mo. 1929, now Sec. 863, R. S. Mo. 1929), governed the case.

Upon the sustention of the demurrer, the plaintiff stood upon

his petition and refused to plead further. Whereupon the court dismissed the petition, and plaintiff appealed. After the appeal was taken, the defendant, Milton Thompson, died, and the cause was revived against the estate in the name of his executrix. .

The second clause of the three-year statute, section 1318, now 863, covers "an action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved."

Plaintiff, however, contends that the action is on a "liability created by statute other than a penalty or forfeiture" and consequently the five-year Statute of Limitations (Sec. 1317, R. S. Mo. 1919, now 862, R. S. Mo. 1929), controls. The correctness of the ruling on the demurrer, therefore, depends upon whether the statutes upon which the action is based, are *penal*, as defendant claims, or *merely remedial* as plaintiff contends. If penal, the three-year statute governs; if remedial, the five-year statute controls.

The original source of authority for the cause of action herein is in section 27, Article 12, of our State Constitution, which is as follows:

"It shall be a *crime*, the nature and punishment of which shall be prescribed by law, for any . . . director . . . or other officer of any banking institution to assent to the reception of deposits . . . by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and any such officer . . . shall be *individually responsible* for such deposits so received . . . with his assent." (Italics ours.)

In Fuzz v. Spaunhorst, 67 Mo. 256, the above constitutional provision was held not to be self-enforcing and therefore needed legislative assistance. In so holding, Judge SHERWOOD, speaking for the court (p. 268), said: "The provision under discussion is highly penal, and is therefore to receive a more guarded construction than should otherwise be accorded to it." He further says (p. 269) that this would certainly be a correct rule of construction were a penal statute to be construed, and that a similar rule of construction is applicable here, where it is to be determined whether a constitutional provision is to be immediately operative, "when if so operative, heavy *penalties and forfeitures* will attend such operation." Consequently, section 21, Laws 1877, p. 33, was enacted which has since become section 3365, Revised Statutes of Missouri 1919, now section 4116, Revised Statutes of Missouri 1929 (said section makes such reception of a deposit a felony punishable as for larceny of the amount of money so deposited), but this section has been repealed (Laws 1931, p. 201); also section 1, Laws 1877, p. 35, which later became sections 11763 and 11764, Revised Statutes of Missouri 1919 (now Sections 5381 and 5382, R. S. 1929), was enacted to carry section 27, Article 2, of the Constitution, into effect.

The first of these, section 11763, Revised Statutes of Missouri, 1919, or which is the same, section 5381, Revised Statutes of Missouri, 1929, reads as follows:

"No president, director . . . or other officer or agent of any bank . . . shall receive or assent to the reception of deposits . . . after he shall have knowledge of the fact that it is insolvent, or in failing circumstances. Every person violating the provisions of this section shall be *individually responsible* for such deposit so received. . . ."

Provisos follow allowing a director who has paid more than his share the proper remedy at law against such as shall not have paid their share of such liabilities and where some are insolvent the same shall be paid for the time being by those who are solvent.

The second of these, section 11764, Revised Statutes of Missouri, 1919, or, which is the same, section 5382, Revised Statutes of Missouri, 1929, reads as follows:—

"In all suits brought for the recovery of the amount of any deposits received, . . . all officers . . . of any such bank charged with so having assented to the reception of such deposits, . . . may be joined as defendants or proceeded against severally, . and the fact that such bank was so insolvent or in failing circumstances at the time of the reception of the deposit charged to have been so received . . . shall be *prima-facie* evidence of such knowledge and assent to such deposit . . . on the part of such officer. . . ."

The third of these, section 11765, Revised Statutes of Missouri 1919 (now Sec. 5383, R. S. Mo. 1929), reads as follows:—

"This article shall extend to and may be enforced by and against the executors and administrators of such deceased officers, agents, and managers."

The above named sections, therefore, form the basis of plaintiff's right to bring this suit. Section 860, Revised Statutes of Missouri 1929, of Article 9 of Limitation as to Personal Actions, provides that—

"For the purposes of this article, the cause of action shall not be deemed to accrue when the wrong is done, or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment. . . ."

Hence in this case, the cause of action accrued on November 12, 1926, when the bank failed and went into the hands of the Finance Commissioner. [State ex rel. v. Haid, 22 S. W. (2d) 1045.] So that if the statute or the cause of action given thereby is penal, then the suit, not having been brought within the time allowed by the statute, section 863, Revised Statutes of Missouri 1929, dealing with "an action upon a statute for a penalty or forfeiture," was not brought in time, and in that event, the demurrer was properly sustained.

It is argued that section 27, Article 12, of the Constitution, which, as stated, is the foundational authority for the cause of action involved, deals with the matter in two branches, (1) that part saying that it shall be a crime which is penal, and (2) that part which makes the bank officers individually responsible, and this creates a mere statutory civil liability purely remedial in its nature. It might seem so, and yet this feature making him responsible can well be an *additional penalty* instead of a mere civil liability other than a penalty or forfeiture. The term "penalties" and "forfeitures," as used in the various Statutes of Limitation, have been construed to have reference to those created by statute alone, and inflicted for dereliction of duty, or failure to perform specific acts, or for the commission of acts prohibited by statute. The *effect* and not the *form* of the statute determines whether it is penal or not. [37 C. J. 788-9.] A civil liability imposed upon a corporation officer as a consequence of doing a forbidden act is a penalty, and it is held that an action on a statute giving "exemplary damages" in addition to damages covering actual loss is an "action upon a statute for penalty or forfeiture." [37 C. J. 789.] Judge SHERWOOD, in Fuzz v. Spaunhorst, supra, was speaking of section 27, Article 12, of the Constitution, as a whole or in its *entirety,* when he said of the section that, if operative, heavy "penalties *and forfeitures*" would attend such operation. A part of the penalty is the punishment for larceny, while the forfeiture is the liability to pay for the loss sustained. There is nothing of contract or of trust existing in the relation between the depositors of a bank and its directors, nor was there, at common law, any personal liability on the part of the directors to depositors merely because of their assent to the reception of the deposits with the knowledge that the bank was insolvent. And to render a director personally liable, under such statutes, he must have had *actual* knowledge of the insolvency of the bank, and actual knowledge means a *guilty* knowledge, and not an innocent *bona-fide* ignorance arising from neglect on his part to inquire into the financial condition of the bank. [3 R. C. L., par. 103, p. 474; Utley v. Hill, 155 Mo. 232.] It is true, in the case last cited, no question of limitation was involved, but the court in deciding the two points that were involved, not only says, "The law is drastic and penal," and that "It was intended to reach and punish the *guilty,*' (italics ours), but that "It must be construed to be intended as a sword with which to punish the guilty," and although in the course of the opinion he sometimes refers to it as a "statutory liability" it is *manifest* that he regards it as a liability inflicted as a penalty, and, as shown by the quotation from 37 Corpus Juris 789, it will be seen that "a civil liability imposed upon a corporation officer as a consequence of doing a forbidden act is a penalty." And the statement in Judge SHERWOOD's opinion that there is no relation of trust and confidence between director and depositor, and that no cause of action at

common law is given the latter against the former in such a case, is stated for the purpose of showing that the liability created is a penalty.

It is true, that in the states outside of Missouri, the courts are not entirely in accord as to whether the cause of action is penal or remedial, the discord arising from the difference of views on the question whether the cause of action granted arises out of an implied contract involved in the relation between director and depositor or depends solely on the liability created by the statute in the nature of a penalty. Hence decisions in such foreign states, holding that it is a mere civil liability governed by the limitation in ordinary personal actions, cannot be regarded or looked to as even advisory on the question involved. We are controlled by the decisions on that subject in this State.

Appellant contends that our Supreme Court, in the case of Ivie v. Bailey, 5 S. W. (2d) 50, has decisively settled the question that the statute involved herein is not penal but merely created a statutory civil liability. It is true that certain language used therein might seem to imply that the author of the opinion regarded the latter portion of section 12, Article 2 of the Constitution, as creating a mere civil liability, but as we have heretofore seen, the cause of action while spoken of as a liability may nevertheless be penal in its nature. The language used was *not in determining whether it was penal or remedial* but whether sections 11763 and 11764 were repealed by section 11724; and if they were not, it was contended that said sections are unconstitutional in that they were in violation of section 9, Article 12 of the Constitution, and also violative of section 20, Article 2 of said Constitution. The court, however, did not consider or pass upon, in any way directly or indirectly, the question of penalty or of limitation applicable to suits thereunder, hence it cannot be successfully maintained that the particular point involved in the case at bar has been decisively settled by that decision.

As heretofore intimated, no matter how the courts of other states may consider such statutes, under a constitutional provision giving a cause of action where none existed at common law, and where no relation between the parties can be implied as forming the basis of such right, but in which the liability created by the statute is made to follow the *intentional* doing of a *wrongful* act, the courts of our State have, from the adoption of this constitutional provision and the original passage of said sections 11763 and 11764, Revised Statutes of Missouri 1919, uniformly treated and declared actions thereunder to be actions for a penalty. For instance, in Fuzz v. Spaunhorst, 67 Mo. 256, 268, the Supreme Court say ''the provision under discussion is highly penal,'' and though it may doubtless be urged that the constitutional provision is indeed highly penal as to the ''crime'' feature

therein contained, but remedial as to the individual responsibility or liability to the depositor suffering loss by such crime. Nevertheless the court was speaking of the constitutional provision as a whole, and said (p. 271): "We think it very evident that the section whereon the plaintiffs rely was designed to operate as a *whole* and not in detached portions; that the penalties prescribed, *civil and criminal*, were to go hand in hand." (The first italics the court's, the three last italics ours.) The court further calls attention to the measure of civil liability as being individual responsibility for such deposits so received "only when the act of reception . . . becomes tainted with criminality."

In Eads v. Orcutt, 79 Mo. App. 514, 516, we think that the court *did* specifically decide that the statute was penal, for it says, "If the statute is not penal this action at law cannot be sustained." But the judgment for plaintiff was affirmed. Moreover, Judge ELLISON who wrote the opinion, after analyzing certain cases in other states seemingly holding a contrary view (p. 519), says:—

"But while the statutes construed in some of these cases are in some respects similar to our statute, yet it will be found on an investigation that they are based on the idea of a *contractual liability* arising from the fact that the membership of the corporation, in connection with the statute respecting such membership, made the obligation substantially contractual. *But when the statute* imposes a liability on the corporation officer which was not his, as a consequence of his doing a forbidden act, *it is a penalty* (in a local sense) notwithstanding it may afford a remedy to the party complaining." (Italics ours.)

And on page 520, Judge ELLISON finally says: "We are satisfied that the civil liability thus put upon the officers is a penalty," and "Being penal it would be governed by the period prescribed by the statute of limitations as to penalties, unless otherwise provided," which, of course, has not been done.

In White v. Poole, 220 Mo. App. 973, 988, 272 S. W. 1028, it is said: "The reception of the deposit gives rise to the penalty imposed by the statute, that is the basis of the cause of action." In Fichtner v. Mohr, 16 S. W. (2d) 739, a case very similar to the one at bar, it was held that in a civil action to recover a penalty, to which the three-year Statute of Limitation (Sec. 1318, R. S. Mo. 1919, now Sec. 863, R. S. Mo. 1929), applied, and not the five-year statute (Sec. 1317, R. S. Mo. 1919, now Sec. 862, R. S. Mo. 1929). On *certiorari*, the Supreme Court, in State ex rel. v. Haid, 22 S. W. (2d) 1045, refused to quash the opinion in the Fichtner case, holding that it did not conflict with any controlling decision of the Supreme Court. Of course that does not say whether the Fichtner case was correctly decided or not, since it is not the province of the Supreme Court in

cases of *certiorari* to pass upon the merits. But it is a holding that the decision did not conflict with any decision of the Supreme Court so far as the latter court were advised. This, we take it, disposes of appellant's contention that the case of Ivie v. Bailey, 5 S. W. (2d) 50, holds that the statutes on which the case at bar is based are remedial and create a mere civil liability instead of a penalty.

It follows that the learned trial judge, in the case now on appeal before us, ruled correctly in sustaining the demurrer. The judgment is accordingly affirmed. All concur.