Helen M. JULIAN, Administratrix of the
Estate of John H. Julian, Deceased,
Plaintiff-Appellant,

v.

Rufus BURRUS II, Rufus Burrus I, and
Samuel R. Briscoe,
Defendants-Respondents.

No. KCD 30019.

Missouri Court of Appeals,
Western District.

May 5, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 9, 1980.

Application to Transfer Denied
July 15, 1980.

William B. Morgan, Campbell, Gilmore, Erickson, Cottingham, Morgan & Gibson, Kansas City, for plaintiff-appellant.

W. Raleigh Gough, Independence, for defendants-respondents.

Before HIGGINS, Special Judge, Presiding, WELBORN, Special Judge, and SWOFFORD, J.

SWOFFORD, Judge.

This is an action brought by the widow and Administratrix of the Estate of John H. Julian, deceased, wherein she seeks to recover the sum of $7,185.00 in damages and $10,000.00 in attorney's fee arising from a loan transaction of her deceased husband which she alleged represented usurious interest pursuant to Section 408.050 RSMo 1969 (now Section 408.050 RSMo 1978) and attorney's fees under the same statute. She appeals from a judgment in the court below wherein the separate motion of defendant Rufus Burrus II (hereafter Burrus II) and the separate motion of defendant Rufus Burrus I and Samuel R. Briscoe (hereafter Burrus I, and Briscoe) to dismiss the plaintiff's cause of action, were sustained by the trial court, and said court dismissed the action upon the pleadings, with prejudice, and entered judgment accordingly, without setting forth any reasons for such actions. It is apparent, however, from the record and from the briefs before this Court that the order of dismissal as to Burrus I and Briscoe was based upon the conclusion of the trial court that any cause of action which the plaintiff stated against

them was barred by the statute of limitations and the basis of the court's dismissal as to Burrus II was that no cause of action was stated as to him under the usury statute.

It is obvious, therefore, that the history and chronology of this case and the allegations in plaintiff's pleadings are of decisive importance. In reviewing the allegations of the petition upon a dismissal of the cause of action therein attempted to be stated, this Court "allows the pleading its broadest intendment, * * * treat all facts alleged as true, construe the allegations favorably to the plaintiff and determine whether the averments invoke principles of substantive law". *Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310[1] (Mo.1978) and, see also, *Boyer v. Guidicy Marble, Terrazzo and Tile Co.*, 246 S.W.2d 742[1] (Mo.1952). Further, this court on this review must bear in mind the mandatory admonition of Rule 55.24, that pleadings shall be construed so as to do substantial justice.

The chronology of the filing of the pleadings pertinent to this appeal is that on February 25, 1975, the plaintiff filed a petition denominated "Petition for Recovery of Usury" directed against Burrus II only. On October 20, 1976, the plaintiff, with leave of court, filed her First Amended Petition wherein she joined as codefendants Burrus I and Briscoe. Thereafter, on November 13, 1976, defendants Burrus I and Briscoe filed their joint motion to dismiss, and on November 23, 1976, defendant Burrus II filed his separate motion to dismiss. Thereafter and on August 8, 1977, by leave of court, the plaintiff filed her Second Amended Petition which incorporated the 20 paragraphs of her First Amended Petition and added a paragraph to paragraph 17. On December 15, 1977, the court below entered the judgment appealed from sustaining the motions to dismiss and dismissing plaintiff's cause of action, with prejudice. This Court, therefore, must analyze the somewhat complicated and unusual facts pled in those documents under the rules of interpretation above stated as a background for application of the law and decision on this appeal. Those facts of the history of the litigation are thus summarized:

Plaintiff is the Administratrix of the Estate of her deceased husband, John H. Julian, who died on September 7, 1972.

Early in 1970, decedent John Julian unsuccessfully tried to obtain a loan from various lending sources, during which time he contacted Burrus II, who, after investigating decedent's financial situation, advised him that it would be impossible for him to obtain an ordinary loan but that it would be possible for him, Burrus II, to obtain such a loan for decedent through a scheme which he and Burrus I had devised. This scheme was described to decedent by Burrus II.

Julian and his wife would execute a promissory note for $25,000.00 to their daughter, Sue Louise Meeker, payable in one year for the face amount; if not paid when due, the note would thereafter bear interest at the maximum non-usurious rate; the note would be secured by a deed of trust on real estate of John Julian; the note would be purchased from Julian's daughter at a substantial discount; additional broker's fees and other charges would be deducted from the monies paid by the lending or purchasing sources.

Burrus II reduced the above scheme to an offer, written in Burrus II's own handwriting, which decedent Julian executed on May 18, 1970 (Exhibit A). This writing contained two alternatives for effecting this scheme, and named Burrus II as broker. This offer was entitled "Offer . . . for loan secured by 2d D.T. & Note given . . . on Courtney Farm".

Pursuant to this arrangement, on May 26, 1970 Burrus II presented a promissory note which decedent Julian and his wife signed (Exhibit B). The note was for $25,000.00 payable to the order of Sue Louise Meeker one year after May 26, 1970, and if not paid, bore interest at the maximum non-usurious rate as provided by Missouri law until fully paid. Included also was an acceleration clause triggered by "any conveyance of any of the title or interest in the property secur-

ing this note". Decedent Julian and his wife simultaneously executed a deed of trust prepared by Burrus II to secure the note (Exhibit C). A copy of the note is attached to the deed of trust. Burrus II was the named trustee of the deed of trust.

At the instruction of Burrus II, decedent's daughter, Sue Louise Meeker, endorsed the note in blank. Burrus II took the note and deed of trust, and later obtained a title insurance policy.

On June 2, 1970, Burrus II received $10,000.00 from defendant Burrus I, and $10,000.00 from defendant Briscoe. From this $20,000.00 Burrus II deducted $2,000.00 for broker's fee and $200.00 additional charges and fees, and distributed $17,800.00 to decedent. The $2,000.00 broker's fee allegedly was split between Burrus II and one James Lewis (not a party nor further identified), each taking $1,000.00.

The promissory note as endorsed by Meeker, is attached to the petition and incorporated as a part thereof (Exhibit B) and plaintiff alleges that both Burrus II and Burrus I had actual knowledge that no consideration had been paid for the said note to Meeker. She acted solely as a straw party in this whole transaction.

Plaintiff's Exhibit D, entitled "Disclosure Statement of Loan", dated May 26, 1970, names Sue Louise Meeker as the "lender". This form shows additional "loan" charges as follows: $179.00 Title Insurance premium; $10.00 Recording Fee; $75.00 Attorney Fee; $30.00 Broker Fee; and $491.95 Taxes (1969). These sums total $785.95, but this $785.95 figure is obscure as it does not elsewhere appear as separate items of expense in the pleadings or the various documents incorporated therein. By whom, when or how they were paid must await further disclosure. This Disclosure Statement reveals the amount of the loan as $25,000.00; the "Finance Charge (Discount)" as $7,000.00; the "Amount Fi-

nanced" as $18,000.00; and the "Annual Percentage Rate" as 39%.

Over two years later, on August 18, 1972, after requesting Burrus II to accept a lesser amount, decedent paid the note face amount of $25,000.00 plus an additional $2,462.00. At the instruction of Burrus II, payment was made payable to Burrus II and Briscoe. Thereafter, Burrus II disbursed the funds to Burrus I and Briscoe (in what proportion and amounts is not pled).

The petition further alleges that the $5,000.00 discount, the $2,000.00 "broker's fee" and the $2,462.00 interest were in fact all interest for the use of less than $18,000.00 from June 2, 1970 to August 18, 1972, in violation of Section 408.030 RSMo 1969 creating a cause of action in Administratrix-plaintiff to recover excess interest under § 408.050 RSMo 1969. The petition further alleges that at all times Burrus II was acting in his own behalf and as agent and on behalf of Burrus I and Briscoe, to permit the collection of usurious interest, of which scheme all three were aware and possessed knowledge.

The amendment to the petition on August 8, 1977 by the addition to paragraph 17, with leave of court, resulted in the further allegations that all of the defendants' actions here involved were done pursuant to a common plan or design to commit an illegal and tortious act, to-wit, the exaction of usurious interest from Julian, and that the taking of such usurious interest by Burrus I and Briscoe was aided and encouraged by Burrus II and ratified and adopted by him.

At the time of this transaction the contractual limits of interest in Missouri on the type of loan here involved was 8% per annum. Section 408.030 RSMo 1969 [1].

This statute, at the time of this transaction, read:

---

1. This statute was amended in 1974, Laws 1974 2d Ex.Session, p. 968, Sec. 1, effective 1/9/75, raising the legal rate to 10% per annum. Section 408.030 RSMo 1978. It was further amended in 1979, S.B.No. 305, effective 7/3/79 wherein the 10% contractual rate was left un-

disturbed but added that by agreement and under certain circumstances the parties could agree on interest at the "market rate". Neither of these provisions are applicable to the instant case.

"The parties may agree, in writing, for the payment of interest, *not exceeding eight percent per annum*, on money due or to become due upon any contract." (Emphasis supplied) [2]

The other statute directly involved in the present controversy and applicable to the transaction is Section 408.050 RSMo 1969, which reads, in pertinent part:

"No person shall directly or indirectly take, for the use or loan of money * * above the rates of interest specified * * for the loan of any money * * * *. Any person who shall violate the foregoing prohibition of this section shall be subject to be sued, for any and all sums of money paid in excess of the principal and legal rate of interest of any loan, by the borrower, * * * and shall be adjudged to pay the costs of suit, including a reasonable attorney's fee to be determined by the court."

Charging per annum contractual interest in excess of 8% violated the restrictions placed by the Legislature under Section 408.030, supra, and gave rise to the cause of action provided by Section 408.050, supra, which plaintiff here pursued.

The other Missouri statutes involved in this appeal and demanding attention are Sections 516.120 RSMo 1969, and Section 516.130 RSMo 1969. Section 516.120 sets forth the nature of those actions which must be brought within five years, and provides in pertinent part:

"Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied * *

(2) An action upon a liability created by a statute *other than a penalty or forfeiture*; * * * *" (Emphasis supplied)

Section 516.130 provides for those actions which must be brought within three years, and provides in pertinent part:

"Within three years:

*     *     *     *     *     *

(2) An action upon a *statute for a penalty or forfeiture*, where the action is given to the party aggrieved, or to such party and the state." (Emphasis supplied)

Some additional detail as to the procedural history of this litigation would be helpful. The joint motion to dismiss of Burrus I and Briscoe in the trial court urged two grounds: first, that the plaintiff's petition did not state sufficient facts to show a valid claim for relief, and second, any such claim was barred by the three-year statute of limitations, Section 516.130, as to them, since Section 408.050 provided for a penalty or forfeiture. Admittedly, they were not joined in the litigation until October 20, 1976, over four years after Julian had retired the obligation.

The separate motion of Burrus II only urged the ground that plaintiff's petition did not state sufficient facts to constitute a valid claim against him since his connection with the transaction as pleaded did not charge that he "collected or took" any interest "usurious or otherwise". The judgment of dismissal from which this appeal was duly and properly perfected did not specify the ground or grounds upon which it was based.

The appellant raises two points on this appeal. First, she argues that Section 408.-050, supra, is remedial and does not provide for a penalty or forfeiture, and that the five-year statute of limitations applies; and second, that her petition contains sufficient allegations to bring Burrus II within the strictures of Section 408.050, supra.

A joint brief was filed by Burrus I, Briscoe, and Burrus II, wherein their positions were stoutly asserted. Under the circumstances above noted and the lack of guidance by the trial court as to the reasons for its judgment of dismissal in favor of the defendants, and in the interest of clarity, the problem of whether or not the petition stated a cause of action against the defendants will be first considered.

2. In the absence of an agreement as to the rate of interest the legal rate of interest in Missouri was 6% at the time of this transaction.

Missouri has adopted a very usable and simple definition of "usury". This court in *Anderson v. Curls*, 309 S.W.2d 692 (Mo.App. 1958) stated at l. c. 695:

" * * * Usury is the exacting, taking or receiving of a greater rate of interest than is allowed by law for the use of money. * * * (case citations omitted)"

█ A corollary rule is that courts in determining the validity of the charge of usury will look to the *substance* of the transaction under scrutiny rather than its *form*. 91 C.J.S. Usury § 13, pp. 583–584; *Webster v. Sterling Finance Co.*, 195 S.W.2d 509, 514–515[4], 355 Mo. 193 (1946); *State on Inf. Taylor v. Salary Purchasing Co.*, 218 S.W.2d 571, 573[1], 358 Mo. 1022 (1949).

The court in *General Motors Acceptance Corporation v. Weinrich*, 262 S.W. 425, 218 Mo.App. 68 (1924) stated, l. c. 428[2]:

" * * * In the investigation of a transaction to see whether usury has been exacted, the law intends that the search shall penetrate, through form, device or makeshift, to the very substance. The form in which the agreement is made * * * are immaterial (cases cited)."

From the facts pleaded by plaintiff and the documents made a part of her pleadings, it must be accepted as true that Julian's payment to the defendants on August 18, 1972 of the sum of $27,462.00 under the terms of the note represented a payment of the principal face amount of $25,000.00 together with 8% interest from the due date, May 26, 1971, to the date of payment, August 18, 1972, in the amount of $2,462.00.

It is pleaded, however, that Julian paid $27,462.00 for the use of $17,800.00 and thus the actual cost for the use of the money to Julian was $9,662.00 or slightly over 54%, for a period of two years, two months and twenty-two days. Had Julian been charged at the legal rate of interest on the $17,-800.00 actually received and used by him over the period, the legal compounded interest owed for such use would be approximately $3,311.33.

However, it is apparent that cost to Julian of this loan is represented largely by $5,000.00 increase of the face amount of the loan (funds never involved in the transaction), which sum was then discounted when the note was acquired by the defendants from Sue Louise Meeker, who, according to the pleading, was the daughter of the Julians; did not actually loan them any money or extend any consideration to them for the note; did not actually receive any of the discounted consideration of $20,000.00 from the defendants for her endorsement and transfer of the note; and, occupied the position of a mere conduit for or straw party in the transaction.

█ Does this type of transaction avoid the impact of the usury statutes? It has long been the law in this state that a *bona fide* purchase of usurious commercial paper where such purchase is not used as a pretext to cover a loan transaction violates no statute or law however great the discount or "however small the price"; *General Motors Acceptance Corporation v. Weinrich*, supra, l. c. 429[8]. However, the court in *Anderson v. Curls*, 309 S.W.2d 692, after noting the *Weinrich* rule, stated, l. c. 696[5]:

" * * * on the other hand, *where there is no sale in good faith* but a mere loan, the fact that the note is made to one person who, acting as a conduit, immediately endorses it over to a third person who advances the money, *such procedure is not sufficient to evade the usury statute*." (Emphasis supplied)

No doubt can exist, under the allegations before the Court, that the defendants' transaction with Meeker was not a *bona fide* sale of the Julian paper but a "conduit" or "straw" transfer affording, as such, no exemption from the application of the usury law nor that upon trial the court would be required to consider the $5,000.00 discount as viewed in the light of such law if the evidence supported the allegations.

█ The same must be said as to the $2,000.00 broker's fee or commission paid by Julian to Burrus II and Lewis from the real loan proceeds of $20,000.00, as alleged. The commission or fee of a lender's agent can be

taken into account in determining whether or not the whole transaction violates the usury law. *Little v. Hooker Steam Pump Co.*, 122 Mo.App. 620, 100 S.W. 561 (1907); *Hecker v. Putney*, 196 S.W.2d 442 (Mo.App. 1946). As the rule is stated in 91 C.J.S. Usury § 43(a), p. 624:

"Where an agent exacts from the debtor a bonus or commission, in connection with making a loan, and his act is expressly or impliedly ratified by the creditor, the transaction is usurious, unless the maximum lawful interest on the principal sum is not exceeded."

■ The pleadings at which the motions to dismiss are leveled allege specifically that Burrus II was acting as the agent of Burrus I and Briscoe in furtherance of a plan, design, and scheme common to the three, and that all had actual knowledge of all facts herein set forth as contained in the allegations of the petition.

However, Burrus II asserts a failure to state a cause of action as to him because of the alleged failure of the plaintiff to plead that he, Burrus II, "took" any usurious interest from the transaction, as required by Section 408.050, supra. There is no merit in this contention. The statute states: *"No person* shall *directly* or *indirectly* take, for the use or loan of money * * * "* (usurious interest). The questioned allegations, in addition to the allegations of joint motive, action and agency above noted, further assert that the bonus was paid to Burrus II and Lewis by Julian, and the final payoff of the loan was made to Burrus II and Briscoe. All of these allegations, if and when proved by competent evidence, would support a finding that Burrus II "took" usurious interest within the meaning of the statute.

Under the pleaded facts, accepted as true for present purposes, and the applicable authorities above noted, a cause of action under the usury laws was clearly stated as to all defendants.

The question remains as to Burrus I and Briscoe, whether or not the cause of action as stated against them is barred by the 3-year statute of limitations, Sec. 516.130 RSMo 1969. It is conceded here that the claim against these parties was not activated until they were joined in the suit pending against Burrus II, more than four years after Julian retired the loan. A resolution of this question depends upon whether Section 408.050, supra, was purely remedial in its nature or also provided for a penalty or forfeiture.

■ In construing whether § 408.050 does provide a penalty or forfeiture, it is observed that the ascertainment of legislative intent is the object of construction, and all other construction doctrines are subordinate. *State ex rel. Ashcroft v. Union Elec. Co.*, 559 S.W.2d 216 (Mo.App.1977); *In re Duren*, 355 Mo. 1222, 200 S.W.2d 343 (Mo. banc 1947).

■ The background and history of the law of usury will enlighten a quest for the legislative intent explicated by the statutory enactments now being considered. This historical review starts with the fact that, while "the taking of excessive interest has been regarded with abhorrence from the earliest times" the common law did not forbid the exaction of usury on loans of money, nor did it set any standard as to what percentage would be considered reasonable, nor did it provide any remedy to the borrower in the event of the exaction of unreasonable interest on this type of loan, 91 C.J.S. Usury § 2, pp. 558–559. Regardless of any moral or common law source of the present usury laws in this state, it is firmly accepted that any rights or liabilities arising from that type of transaction are exclusively controlled by statute. *Rukavina v. Accounts Supervision Corp.*, 237 S.W.2d 503, 507[4] (Mo.App.1951).

The initial statutory enactment effective in Missouri, Act. Nov. 5, 1808, Terr. Laws of Missouri, p. 221, provided a 6% maximum legal interest rate, and if the proscription was violated, no interest could be recovered, just the principal. This statute, except that by later amendment interest not to exceed 10% could be agreed to in writing without being usurious (Act. Dec. 11, 1834) was effective until 1841. RSMo 1834–1835, pp. 333–334.

From 1841 until 1897, the statutes on this subject provided that all interest under a usurious loan would go to the county school fund. Act. Jan. 27, 1841. Laws of Mo., 1838–43, pp. 95–96. During this period, the maximum allowable rate of interest ranged from 6% to 8% (or 10%, if agreed in writing). Act. March 24, 1845; Act. Jan. 15, 1847; Act. Feb. 28, 1855; §§ 5972–5977 RS 1889. Note that in the *Ferguson v. Soden* case, 111 Mo. 208, 19 S.W. 727, 728 (1892), the court described the provision for disallowance of collection of usurious interest as a "forfeiture", which case was decided under the scheme providing that interest go to the school fund.

In 1899, §§ 3705–3711 RSMo 1899 changed the school fund plan to another, whereby the usurious interest paid "shall be credited upon the principal debt, and all costs of the action shall be taxed against the party *guilty* of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor." (Emphasis added). By describing the lender in such cases as being "guilty of exacting usurious interest", it is clear that the Legislature intended to prohibit the exaction of usury and to penalize such practice.

In 1909, the statutory provision involved in the instant action was first enacted, Sec. 7182, RSMo 1909, and was carried forward in Section 6494 RSMo 1919; Section 2842, RSMo 1929; Section 3229, RSMo 1939; and, Section 408.050 RSMo 1969, now being considered.[3]

■ It is generally accepted in this state and elsewhere that usury laws form a part of the public policy of the state. But as to specific terms of such statutes some divergence exists as to whether they should be considered as remedial, penal, or both remedial and penal. 91 C.J.S. Usury § 5(a), p. 569. It is the position of the appellant that

Section 408.050 here being considered is *strictly remedial* and thus the 3-year statute of limitations, Section 516.130, supra, applying that limitation to statutes involving "a penalty or forfeiture", and the exclusion contained in the 5-year statute, Section 516.120, supra, have no application here and that, therefore, the Julian estate's claim against Burrus I and Briscoe was not barred.

While the briefs before this Court are thorough and exhaustive on this problem and have been carefully studied and the cited authorities examined, they and independent research fail to disclose any decision adjudicating the point of whether or not Sec. 408.050, supra, according to its terms, is strictly remedial or involves a penalty and forfeiture. Some insight is afforded, however, by cases where the question of usury was pertinent under other statutory provisions. Some of these are of ancient origin. For example, in *Keim v. Vette*, 167 Mo. 389, 67 S.W. 223 (1902), that statute declared that a chattel mortgage lien given to secure a usurious loan was void. Of somewhat more recent vintage is the case of *Tobin v. Neuman*, 271 S.W. 842, 843[1] (Mo.App.1925) involving the same statute (or its basically unchanged progeny). Both *Keim* and *Tobin* reached the conclusion that the chattel statute was *both* remedial and penal. Nothing appears from the briefs or from other research that convinces this Court that a statute such as Section 408.-050, supra, may not be *both* remedial and penal without being self-destructive, and no difficulty is encountered in reaching the conclusion that such was the intent of the Legislature upon its enactment. It must be conceded that the statute was remedial in the sense that it created a statutory civil cause of action for the recovery of usurious interest by the borrower against the lender.

Further discourse as to the various analogies which may be drawn from other statutes and decisions thereunder would be of

---

**3.** In 1975, the Legislature amended this law to provide that the usurious lender was subject to civil liability to the borrower for "twice the amount of interest thus paid", if action therefor

was instituted within five years. Section 408.-030 RSMo 1978; Laws 1974, 2d Extra Session, p. 968, Sec. 1, eff. 1/9/75.

little substantive value here. Particularly is this true in light of the fact that Section 408.050, supra, has been supplemented by present Section 408.030 effective January 9, 1975 (Footnote 3, supra). Of course, the determination of this case is of vital importance to the parties and of great concern to this Court, even though it must of necessity resolve around a superseded law. The fundamental and initial area for decision is whether or not Section 408.050, supra, as then applicable to this case, in addition to its remedial provisions also provided for a "penalty" or "forfeiture", or both.

In the broad view, a "penalty" is defined as "a sum of money of which the law exacts payment by way of punishment for doing some act that is prohibited * *. It is an elastic term with many different shades of meaning. * * *" 70 C.J.S. Penalties § 1, pp. 387–389. In the same broad view the term "forfeiture" is thus defined: " * * * a comprehensive term which, as used in this title, means a divestiture of specific property without compensation, in consequence of some default or act forbidden by law". 37 C.J.S. Forfeiture § 1, p. 4.

Research has failed to disclose any reported case in Missouri which specifically applies the 3-year statute of limitations to the terms of Section 408.050, supra, as involving a penalty or forfeiture and this case now under consideration is one of first (and probably last) impression involving the precise question here presented.

For present purposes and under the facts under consideration, the two terms are virtually legally synonymous. Without categorizing the convincing factors here apparent as necessarily either one or the other, the action dismissed below did involve a penalty or forfeiture and the 3-year statute of limitations was applicable when considered in light of the following:

(1) No right of action based upon the allegations of plaintiff's petition existed at common law but is purely and simply a creature of statute and the fact that a civil personal liability was imposed upon the defendants was in and of itself "a penalty".

In *Vroom v. Thompson*, 227 Mo.App. 531, 55 S.W.2d 1024 (1932) this Court considered the three-year limitation statute as bearing upon the personal statutory liability of a bank director where deposits were accepted when the bank was insolvent. The *Vroom* court held that the 3-year limitation was applicable and affirmed a dismissal of the action brought against the director. In so doing, the court adopted the statement from 37 C.J. 789, "*A civil liability* imposed upon a corporation officer as a consequence of doing a forbidden act *is a penalty*". (Emphasis supplied).

The character of the action is not disturbed by reason of the fact that the statute authorizes that it be maintained by the borrower who has paid the usurious interest. Indeed, the very terms of the 3-year statute, Sec. 516.130, supra, placing actions based upon statutes for a penalty or forfeiture within that limitation states "where the *action is given to the party aggrieved*, or to such party and the state." (Emphasis supplied).

(2) Application of Section 408.050 requires the defendants to return the amount of usurious interest exacted to the borrower, and whether that is termed a penalty or forfeiture it deprives them of their business bargain.

(3) Section 408.050, supra, contains the mandatory language that if the borrower prevails, in addition to the return of the usurious interest collected, the defendants "*shall* be adjudged to pay the costs of suit, *including* a reasonable attorney's fee to be determined by the court." (Emphasis supplied).

Ordinarily, attorneys' fees are recoverable only when called for by contract or provided by statute, or as an item of collateral damage, or where equity requires. *State ex rel. Moore v. Morant*, 266 S.W.2d 723, 727[10] (Mo.App.1954); *Allstate Insurance Co. v. Hartford Accident & Indemnity Co.*, 311 S.W.2d 41, 48[12] (Mo.App. 1958). This leaves no room for the exercise of discretion or adjustment of equities (except as to the reasonable amount of attor-

ney's fees) but mandates the imposition of these further burdens on the lender.

The conclusion is reached that Section 408.050, supra, basically and primarily involved the imposition of penalties and forfeitures and authorized the aggrieved person to initiate the suit for the imposition of such as the legal vehicle and means whereby they could be imposed. The 3-year statute of limitations, § 516.130(2) was applicable as to defendants Burrus I and Briscoe and the suit against them was barred.

█ In the argument portion of her brief for the first time the appellant charges the court below with error in dismissing the action as to Burrus I and Briscoe *with prejudice* as being barred by the 3-year statute of limitations. Her position in this regard appears to be based upon the argument that, thus, she was deprived of the opportunity to amend her pleading to allege facts as would allow *relation back* to the date of the original petition against Burrus II under Rule 55.33(c). The only hint as to the nature of such facts to be alleged so as to accomplish that result she characterizes as "concealment tolling". She asks this Court to reverse the judgment and remand with directions to correct the judgment to provide dismissal *without prejudice* and to grant her leave to amend, if this Court finds (as it has done) that the suit against Burrus I and Briscoe is barred by limitations upon the allegations in her pleadings. There are several reasons why this argument cannot be entertained.

This point was not raised by appellant in her "Points Relied On" in her brief, and therefore neither Rule 55.33(c) nor any authorities are cited under her points in support thereof, all in violation of Rule 84.04(d).

Further, the mandate requested of this Court would be useless to the appellant. Rule 67.03 provides in pertinent part:

"A dismissal *without prejudice* permits the party to bring another civil action for the same cause, *unless the civil action is otherwise barred.* * * * *" (Emphasis supplied)

Here, according to plaintiff's pleadings and the ruling of this Court, her cause of action against Burrus I and Briscoe was clearly barred by the 3-year statute of limitations. Also, if by "concealment tolling" the appellant means fraudulent concealment of facts, such allegations would be in direct and diametrical conflict with the facts already pleaded, which must be accepted as true and which had been adhered to by the appellant throughout the long course of this litigation. These pleaded facts show that Julian was given the most minute details of all the financial arrangements proposed by Burrus II, both orally and in writing. If she means by the term used, concealment of the person in the sense of avoiding service of process, the record refutes such claim since as soon as Burrus I and Briscoe were joined, service was had upon them.

The appellant's argument is without merit and the trial court properly sustained the motion to dismiss with prejudice as to Burrus I and Briscoe.

Such is not the case as to Burrus II. The statute of limitations is not involved in the claim against him since the suit against him was filed within the 3-year period of limitations and, as previously discussed, a cause of action was stated against him under the usury statutes. The court erred in sustaining his motion to dismiss.

Nothing contained in this opinion, however, is to be construed to release the plaintiff in that action (appellant here) from the burden placed upon her to make competent proof of the essential facts pleaded constituting her cause of action against Burrus II upon trial.

Accordingly, the judgment below is affirmed as to Rufus Burrus I and Samuel R. Briscoe, and reversed and remanded as to Burrus II. It is so ordered.

All concur.